FILED
United States Court of Appeals
Tenth Circuit

August 11, 2023

Christopher M. Wolpert
Clerk of Court

UNITED STATES COURT OF APPEALS

FOR THE TENTH CIRCUIT

_____

CHRISTOPHER DAVID BROWN,

    Plaintiff - Appellant,

v.

DANIEL SCHNURR; JEFFREY NEAL PETTIJOHN; TODD E. SWENSON; CARMEN G. BAYNHAMI,

    Defendants - Appellees.

No. 22-3183
(D.C. No. 5:21-CV-03105-JAR-GEB)
(D. Kan.)

_____

### ORDER AND JUDGMENT[*]
_____

Before **HOLMES**, Chief Judge, **PHILLIPS**, and **McHUGH**, Circuit Judges.
_____

Christopher David Brown, a Kansas state prisoner proceeding pro se, appeals the district court's judgment in favor of defendants on his claims arising under 42 U.S.C. § 1983 and Kansas law. Exercising jurisdiction under 28 U.S.C. § 1291, we affirm.

---

[*] After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist in the determination of this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument. This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

## I.  BACKGROUND

In his complaint, Mr. Brown alleged that on September 13, 2018, an officer at the Hutchinson Correctional Facility, Todd E. Swenson, injured him by intentionally closing a food pass door on his hand, wrist, and arm.  He alleged that another officer, defendant Jeffrey Neal Pettijohn, saw the incident and heard Mr. Brown's request for help but failed to intervene.  Mr. Brown alleged that the officers' conduct was in retaliation for grievances he had filed or threatened to file against them.  Mr. Brown also named as defendants Warden Daniel Schnurr and the nurse who treated him for his injuries, Carmen G. Baynhami.  Mr. Brown asserted the defendants' actions violated his rights under the First and Eighth Amendments of the United States Constitution and under the Kansas Constitution, and also constituted assault and battery under Kansas law.

On screening, the district court dismissed the claims against Warden Schnurr and Nurse Baynhami because the allegations in the complaint, as supplemented by Mr. Brown's filings in response to orders to show cause, failed to demonstrate that Warden Schnurr caused Mr. Brown's injuries or that either Warden Schnurr or Nurse Baynhami acted with a culpable state of mind.  The court allowed the claims against Officers Swenson and Pettijohn to continue.  Those defendants then filed a motion to dismiss or for summary judgment.  They argued that the federal claims against them were barred by Mr. Brown's failure to exhaust available administrative remedies as required by 42 U.S.C. § 1997e(a), and that his state-law claims were untimely.

The district court granted Officers Swenson and Pettijohn summary judgment on the § 1983 claims because Mr. Brown failed to exhaust administrative remedies. The court explained that the exhaustion requirement for constitutional claims brought under § 1983 is set out in Article 15 of Chapter 44 of the Kansas Administrative Regulations. *See* Kan. Admin. Regs. § 44-15-101a(d)(1)(B) (stating that the Article 15 grievance procedure applies "to a broad range of matters that directly affect the inmate, including . . . actions by employees . . . and incidents occurring within the facility"). The court also acknowledged that an Article 15 grievance must "be filed within 15 days from the date of discovery of the event giving rise to the grievance, excluding Saturdays, Sundays and holidays," and, "regardless of time of discovery, [no] later than one year after the event," *id.* § 44-15-101b.

Applying this framework, the district court agreed with Officers Swenson and Pettijohn that an Article 15 grievance concerning the incident Mr. Brown filed on September 25, 2019, was untimely because it was filed more than a year after the incident. The court rejected Mr. Brown's argument that the 15-day clock did not begin to run until April 17, 2019, when he received the denial of a personal injury claim he had filed eight days after the incident, and that he timely exhausted his remedies by filing a grievance about the incident on April 25, 2019. The court explained that personal injury claims are governed by a provision of Article 16 of the regulations, Kan. Admin. Regs. § 44-16-104a, which states: "Each inmate claim for personal injury shall be submitted to the facility and secretary of corrections within 10 calendar days of the claimed personal injury." The court concluded that the

3

Article 16 personal injury claim procedure is "'separate and distinct'" from the Article 15 grievance procedure and therefore did "not count as exhausting [Mr. Brown's] claims under the PLRA [(Prison Litigation Reform Act)] for the events that transpired on September 13, 2018." R., Vol. 3 at 111 (quoting *Lewis v. Carrell*, No. 12-CV-3112, 2015 WL 413640, at *3 (D. Kan. Jan. 30, 2015 (unpublished), which quoted *Redford v. State ex rel. Dep't of Corr.*, Nos. 106,787, 106,788, 2013 WL 781102, at *6 (Kan. Ct. App. Mar. 1, 2013) (unpublished)). The court further observed that the federal district courts of Kansas "have consistently held that the personal injury claim process in Article 16 does not exhaust administrative remedies for purposes of a § 1983 action." R., Vol. 3 at 111–12 (citing *Lewis*, 2015 WL 413640, at *3; *Conley v. Pryor*, No. 11-3200, 2015 WL 413638, at *14 (D. Kan. Jan 30, 2015) (unpublished); *Lindsey v. Cook*, No. 5:19-cv-03094, 2021 WL 483855, at *2 (D. Kan. Feb. 4, 2021) (unpublished); and *Lynn v. Willnauer*, No. 5:19-cv-03117, 2022 WL 3027013, at *2–3 (D. Kan. Aug. 1, 2022) (unpublished)).

The district court disagreed with Mr. Brown that the denial of the personal injury claim was the event that gave rise to his grievance. The court reasoned that crediting this argument would be contrary to the express prohibition on using the Article 15 grievance procedure in conjunction with the Article 16 personal injury claim procedure: "The grievance procedure shall not be used in any way as a substitute for, or as part of, . . . the . . . personal injury claims procedure." Kan. Admin. Regs. § 44-15-101a(d)(2). The court further observed that "the regulations

4

permit both types of complaints to proceed at the same time." R., Vol. 3 at 112. In support of that determination, the court pointed to Kan. Admin. Regs. § 44-16-104a(c) and *Conley*. Section 44-16-104a(c) provides: "The requirement that the inmate submit the [personal injury] claim as described in subsection (a) shall apply whether or not the inmate pursues a grievance pursuant to article 15 and whether or not the inmate files a claim with the legislative joint committee on special claims against the state." *Conley* interpreted § 44-16-104a(c) to mean that "an inmate who wishes to pursue *both* a personal injury claim and a § 1983 claim must comply with two distinct sets of administrative procedures even if he bases his claims on a single act." 2015 WL 413638, at *13.

The district court saw no merit in Mr. Brown's contention that he should be excused from failing to exhaust because prison officials allegedly destroyed his administrative filings. The court found that he had provided no competent evidence in support of his contention, such as "copies of a timely Chapter 15 grievance," and that he had not explained whether any "destroyed grievance contain[ed] all of the content required by Article 15." R., Vol. 3 at 111.

The district court also rejected Mr. Brown's argument that his April 25, 2019, grievance was permitted by Kan. Admin. Regs. § 44-15-201, which is titled "Special kinds of problems." Under that regulation, an inmate may "bring a problem to the attention of a higher authority without going through the grievance procedure" by sending "as official mail a sealed letter or grievance report form to the warden of the facility, the secretary of corrections, or the state pardon attorney." § 44-15-201(a).

5

But this procedure "should be reserved for the most difficult and complex problems," not "matter[s] that can be internally handled under the inmate grievance procedure." *Id.* Consequently, the receiving official may return a complaint letter "to the inmate with instructions to the inmate to make use of and follow the proper grievance procedure if, in the opinion of the official, the matter is appropriate for handling through the grievance procedure." *Id.* § 44-15-201(b).

Mr. Brown's "Special Kinds of Problems" grievance was returned to him because § 44-15-101a(d)(2) prohibits grieving the response to a personal injury claim. *See* R., Vol. 1 at 62. The district court determined this comported with § 44-15-201(b). The court also found that Mr. Brown's complaint did not rise to the level of "'the most difficult and complex problems'" but instead could have been handled through the grievance procedure. R., Vol. 3 at 113 (quoting § 44-15-201(a)). The court concluded that given his "robust history of grievances within the KDOC [(Kansas Department of Corrections)[1]], he was clearly familiar with how that process should work yet failed to timely avail himself of the administrative remedies that are a prerequisite to his § 1983 claims," and that "he demonstrated he could submit a grievance when he attempted to submit the untimely form in September 2019." *Id.*

Finally, the district court determined there was no evidence that by telling Mr. Brown to file a personal injury claim and suggesting it would be approved, Officer Pettijohn had thwarted Mr. Brown's attempt to file an Article 15 grievance.

---

[1] According to a KDOC official, Mr. Brown filed 293 grievances between 1993 and 2022.

6

*See Ross v. Blake*, 578 U.S. 632, 644 (2016) (explaining that an administrative remedy is not "available" under the PLRA "when prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation"). The court found that Officer Pettijohn's advice was not incorrect, and nothing in the record showed Mr. Brown was prevented from filing a timely grievance while his personal injury claim was pending.

Having concluded that summary judgment was proper on Mr. Brown's federal claims, the district court declined to exercise supplemental jurisdiction over his state law claims. This timely appeal followed.

## II.  DISCUSSION

### A.     Dismissal of Warden Schnurr and Nurse Baynhami

Even affording Mr. Brown's pro se filings the liberal construction they are due, *see Yang v. Archuleta*, 525 F.3d 925, 927 n.1 (10th Cir. 2008), we discern no developed argument that the district court erred in dismissing the claims against Warden Schnurr or Nurse Baynhami. He has, therefore, waived appellate review of those dismissals. *See Becker v. Kroll*, 494 F.3d 904, 913 n.6 (10th Cir. 2007) ("An issue or argument insufficiently raised in the opening brief is deemed waived.").

### B.     Grant of summary judgment to Officers Swenson and Pettijohn

Summary judgment is proper if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). We review de novo a district court's decision to grant summary judgment, applying

the same standard governing the district court. *Rivero v. Bd. of Regents of Univ. of N.M.*, 950 F.3d 754, 758 (10th Cir. 2020).

Having reviewed Mr. Brown's appellate arguments,[2] the record, and the pertinent authorities de novo, we are convinced the district court correctly granted summary judgment in favor of Officers Swenson and Pettijohn on Mr. Brown's § 1983 claims. We therefore affirm that ruling for substantially the same reasons the district court provided.[3] Simply put, to exhaust § 1983 constitutional claims, as distinct from personal injury claims, a Kansas state prisoner must exhaust the Article 15 grievance process or show that that process was unavailable. *See* 42 U.S.C. § 1997e(a) ("No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies *as*

---

[2] Mr. Brown complains that this court erred in docketing his supplemental opening brief as an amended opening brief that superseded his original opening brief. But we have considered the arguments Mr. Brown set forth in both opening briefs.

[3] To the extent the district court relied on unpublished cases from the federal district courts in the District of Kansas and, by extension, the Kansas Court of Appeals, we find the reasoning in those cases persuasive with regard to the dual-track system of administrative exhaustion set out in the Kansas Administrative Regulations. We also note our own prior, unpublished decisions affirming district court rulings involving failure to exhaust under the dual-track system. *See Kidd v. Baker*, No. 22-3285, 2023 WL 2396530, at *1 (10th Cir. Mar. 8, 2023) (unpublished); *Lynn v. Kelly*, No. 21-3094, 2022 WL 1043752, at *1 (10th Cir. Apr. 7, 2022) (unpublished). Although *Kidd* and *Lynn* are not precedential and their analysis is limited, we find them persuasive with regard to exhaustion under the dual-track system and cite them for that purpose. *See* 10th Cir. R. 32.1(A) ("Unpublished decisions are not precedential, but may be cited for their persuasive value.").

*are available* are exhausted." (emphasis added)).  We briefly address three of Mr. Brown's arguments.

First, contrary to Mr. Brown's view, we see nothing in § 44-15-101a(d)(1) that precludes the simultaneous exhaustion of administrative remedies under Articles 15 and 16.  The express terms of that provision prohibit only using the Article 15 grievance procedure "as a substitute for, or as part of, . . . the . . . personal injury claims procedure."  And § 44-16-104a(c)'s instruction that an Article 16 personal injury claim must be submitted "whether or not the inmate pursues a grievance pursuant to article 15" clearly contemplates the simultaneous filing of both, just as the Kansas federal district courts have held.

Second, Mr. Brown points to an "Inmate Request to Staff Member" he submitted within 15 days of the incident.  *See* R., Vol. 2 at 469.[4]  In that request, Mr. Brown asked Officer Pettijohn to "sign and return [the] receipt to this grievance" and complained that "the original receipt was torn off and it shouldn't [have] been removed until [Mr. Brown] said [he was] not satisfied and want[ed] to move to the next stage."  *Id.*  He added that he had "made another receipt for this grievance and need[ed] it signed and returned to [him] as [he was] not happy with [Officer Pettijohn's] response."  *Id.*  Mr. Brown also asserted that Officer Pettijohn knew as well as Mr. Brown that Officer "Swenson was out of line 100%" and that Officer

---

[4] A request to staff may be used to document an inmate's attempt to informally resolve a problem before filing an Article 15 grievance.  *See* Kan. Admin. Regs. § 44-15-101(b).

9

Pettijohn had "just left [Mr. Brown] to suffer." *Id.* at 470. And he reminded Officer Pettijohn that he said he would "approve [Mr. Brown's] claim" and had told Mr. Brown to "file a grievance too." *Id.* Officer Pettijohn signed the request and wrote, "Signed and moved forward." *Id.* at 469. As best we can tell, Mr. Brown asserts that this request shows he filed a timely Article 15 grievance about the incident and Officer Pettijohn sent it to the warden, who destroyed it.

We disagree that the request to staff creates a triable question of fact regarding exhaustion.[5] The request is cryptic regarding the substance of the grievance it refers to. And Mr. Brown did not supply a copy of the grievance he claims he timely filed, nor did he explain why he might not have a copy of it despite having provided copies of grievances and requests to staff regarding other matters in support of his assertion that KDOC has a history of destroying his administrative efforts to resolve problems. Further, when an inmate submits a grievance, the warden has 10 working days to

---

[5] Arguably, Mr. Brown has waived appellate review of this argument. The district court did not discuss the request to staff, and we therefore could infer that the court did not consider it because Mr. Brown submitted it as an attachment to an untimely amended response to the summary judgment motion. *See* Suppl. R. at 5. (order denying Mr. Brown leave to file a sur-reply and noting that the amended response was untimely because he filed it after defendants had filed their reply in support of their summary judgment motion). In that instance, because Mr. Brown did not submit the request at the appropriate time, and the district court apparently did not consider it because it was untimely, he would have waived appellate consideration of it. *See Impact Energy Res., LLC v. Salazar*, 693 F.3d 1239, 1246 n.3 (10th Cir. 2012) (explaining that failure to raise issue at appropriate time in the district court waives appellate review). However, we overlook the potential waiver because the district court never struck the amended response and thus could have considered it when analyzing whether prison officials thwarted Mr. Brown's attempt to exhaust under Article 15.

answer it. Kan. Admin. Regs. § 44-15-102(b)(3)(A)(ii). If the warden fails to timely respond, the inmate has three days to appeal to the secretary of corrections. *See id.* § 44-15-102(c)(1). If, as Mr. Brown maintains, he submitted a timely grievance and it was forwarded to Warden Schnurr and then destroyed, exhaustion required him to appeal the lack of a response to the secretary of corrections. He points to no evidence that he did so or was prevented from doing so, and therefore he fails to demonstrate exhaustion.

 Mr. Brown's final argument we will address is that he reasonably relied on the personal injury claim procedure to exhaust his constitutional claims. But he fails to acknowledge the Supreme Court's holding in *Ross v. Blake* that a "reasonable mistake about the meaning of a prison's grievance procedures" does not excuse compliance with § 1997e(a)'s exhaustion requirement, 578 U.S. at 641, and that "[t]he only limit" to that requirement is that "[a]n inmate need exhaust only such administrative remedies as are 'available,'" *id.* at 648 (quoting § 1997e(a)). Although an administrative exhaustion process is "unavailable" when it is "essentially unknowable" to an "ordinary prisoner," *id.* at 644 (internal quotation marks omitted), we conclude that the dual-track exhaustion processes of Articles 15 and 16 do not fall into that category but instead clearly set out separate and distinct exhaustion paths. But even assuming, for the sake of argument, that those processes are "susceptible of multiple reasonable interpretations," Mr. Brown "should [have] err[ed] on the side of exhaustion," *id.*, and pursued relief under both in an effort to exhaust his § 1983 constitutional claims.

**C.    State law claims**

Mr. Brown develops no argument that the district court erred in declining to exercise supplemental jurisdiction over his state law claims. He has therefore waived appellate review of that ruling. *See Becker*, 494 F.3d at 913 n.6.

### III.  CONCLUSION

We affirm the district court's judgment. We grant Mr. Brown's motion for leave to proceed on appeal without prepayment of costs or fees and remind him of his obligation to continue making partial payments until his filing and docketing fees are fully paid. We deny Mr. Brown's motion for appointment of counsel and his motion for a protective order.

    Entered for the Court

    Jerome A. Holmes
    Chief Judge