Case No. 22-3183

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE TENTH CIRCUIT

**CHRISTOPHER DAVID BROWN**,
*Plaintiff-Appellant*

v.

**DANIEL L. SCHNURR, et al.,**
*Defendants-Appellees*

## RESPONSE BRIEF OF DEFENDANTS-APPELLEES
## JEFFREY N. PETTIJOHN and TODD E. SWENSON

Appeal from the United States District Court for the District of Kansas
Honorable Julie A. Robinson, United States District Court Judge
Honorable Gwynne E. Birzer, United States Magistrate Court Judge
Case No. 21-CV-3105-JAR-GEB

OFFICE OF KANSAS ATTORNEY
GENERAL KRIS KOBACH
Matthew L. Shoger, Assistant A.G.
120 SW 10th Ave, 2d Floor
Topeka, Kansas 66612
785-296-2215
matt.shoger@ag.ks.gov

## ORAL ARGUMENT IS NOT REQUESTED

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ......................................................... iv

PRIOR OR RELATED APPEALS ...................................... xii

GLOSSARY ......................................................................... xiii

JURISDICTIONAL STATEMENT ...................................... 1

STATEMENT OF THE ISSUES ............................................ 1

STATEMENT OF THE CASE ................................................ 1

      *Administrative Remedies* ........................................... 3

      *Procedural History* ..................................................... 6

SUMMARY OF ARGUMENT ............................................... 7

ARGUMENT ......................................................................... 9

  I.  The scope of this appeal includes only the grant of
      summary judgment rejecting Brown's § 1983 claims
      against Pettijohn and Swenson as contested in Brown's
      amended opening brief. ............................................... 9

      *Discussion* ..................................................................... 9

      A.  Brown's arguments in his initial opening brief are
         not before this Court. ........................................... 9

      B.  Brown has not appealed regarding his claims against
         Schnurr or Baynham, regarding any official capacity
         claims, or regarding the dismissal of his state law
         claims. ................................................................... 9

      C.  Brown cannot at this stage add new allegations,
         arguments, evidence, or defendants to his case. ........... 10

      D.  Brown cannot incorporate by reference his
         arguments before the district court. ................... 12

E. Brown's unexplained exhibits should not be considered...............................................................14

II. The district court properly granted summary judgment because Brown did not exhaust his administrative remedies.................................................................14

*Standard of Review* .................................................14

*Discussion* ..............................................................15

A. The district court correctly described the uncontroverted facts. ..........................................15

   1. Brown failed to controvert Defendants' Statement of Material Facts, so they were admitted. ............................16

   2. Brown did not properly present any material facts that Defendants could have admitted. ........................................17

B. Brown failed to exhaust his administrative remedies because he filed a time-barred grievance. ......................18

C. Brown's personal injury claim does not satisfy the exhaustion requirement for § 1983 claims under the PLRA. ................................................................22

   1. Grievances and personal injury claims are separate and distinct and are used for different purposes. .....................22

   2. The cases Brown cites comport with this distinction between grievances and personal injury claims. ...............24

   3. Grievances may be filed simultaneously with personal injury claims. ........................................................29

   4. The law regarding grievances did not change. .................30

D. Brown's alleged special kinds of problems grievance would not have satisfied the exhaustion requirement for § 1983 claims under the PLRA.......................................32

E.   Defendant Pettijohn did not lull Brown into following the wrong procedure. ........................................33

F.   Brown cannot show exhaustion of administrative remedies by mere allegations of destroyed grievances. ...........................................................35

G.   String cites of cases without analysis do not present a sufficiently reasoned argument to bring an issue before this Court. ................................................41

CONCLUSION.......................................................................46

CERTIFICATE OF COMPLIANCE......................................47

CERTIFICATE OF DIGITAL SUBMISSION .......................47

CERTIFICATE OF SERVICE ................................................48

ATTACHMENTS ...................................................................49

*District Court Order (Doc. 16)*...........................................*50*

*District Court Memorandum and Order (Doc. 48)* ...............*55*

*Judgment (Doc. 49)* ...........................................................*70*

*42 U.S.C. § 1997e* .............................................................*72*

*K.A.R. §§ 44-15-101, -101a, -101b, -102, & -201* .............*75*

*K.A.R. § 44-16-104a* .........................................................*84*

*Fed. R. Civ. P. 56*..............................................................*85*

*D. Kan. Rule 56.1*..............................................................*87*

*Fed. R. App. P. 28* .............................................................*89*

*Fed. R. App. P. 32* .............................................................*92*

*10th Cir. R. 28* ..................................................................*96*

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Adney v. McGinnis,*
    380 F.3d 663 (2d Cir 2004) ......................................................................42

*Armstrong v. Drahos,*
    2002 WL 187502 (N.D. Ill. Feb. 6, 2002) ................................................43

*Ashcroft v. Iqbal,*
    556 U.S. 662 (2009) .........................................................................37, 39

*Beals v. Jay,*
    730 F. App'x 633 (10th Cir. 2018) ..........................................................34

*Bell Atlantic Corp. v. Twombly,*
    550 U.S. 544 (2007) .........................................................................37, 39

*Bell v. Ward,*
    189 F. App'x 802 (10th Cir. July 26, 2006) ........................................36-37

*Boomer v. Lanigan,*
    2002 WL 31413804 (S.D.N.Y. Oct. 25, 2002) .........................................44

*Boyd v. Corr. Corp. of Am.,*
    380 F.3d 989 (6th Cir. 2004) ...................................................................43

*Branch v. Umphenour,*
    2015 WL 5178374 (E.D. Cal. Sept. 4, 2015) ...........................................46

*Brengettcy v. Horton,*
    423 F.3d 674 (7th Cir. 2005) ...................................................................43

*Camp v. Brennan,*
    219 F.3d 279 (3d Cir. 2000) ....................................................................45

*Chegup v. Ute Indian Tribe of Uintah & Ouray*,
  28 F. 4th 1051 (10th Cir. 2022) ............................................................ 10

*Chytka v. Wright Tree Serv., Inc.*,
  617 F. App'x 841 (10th Cir. 2015) ........................................................ 41

*Coleman v. Blue Cross Blue Shield of Kan., Inc.*,
  287 F. App'x 631 (10th Cir. 2008) ........................................................ 38

*Conley v. Pryor*,
  2015 WL 413638 (D. Kan. Jan. 30, 2015) ................................... 24, 27

*Dale v. Lappin*,
  376 F.3d 652 (7th Cir. 2004) ............................................................... 44

*Dartez v. Peters*,
  2017 WL 2774670 (D. Kan. June 27, 2017) ........................................ 38

*De Niz Robles v. Lynch*,
  803 F.3d 1165 (10th Cir. 2015) ........................................................... 31

*Dixon v. Page*,
  291 F.3d 485 (7th Cir. 2002) ............................................................... 43

*Dole v. Chandler*,
  438 F.3d 804 (7th Cir. 2006) ............................................................... 43

*Edwards v. Vannoy*,
  141 S. Ct. 1547 (2021) ......................................................................... 31

*Fields v. Oklahoma State Penitentiary*,
  511 F.3d 1109 (10th Cir. 2007) ........................................................... 18

*Foresight Resources Corp. v. Pfortmiller*,
  719 F. Supp. 1006 (D. Kan. 1989) ....................................................... 28

*Foulk v. Charrier*,
  262 F.3d 687 (8th Cir 2001) ................................................................ 43

*Gaines-Tabb v. ICI Explosives, USA, Inc.*,
  160 F.3d 613 (10th Cir. 1998) ............................................................ 12

*Garrett v. Selby Connor Maddux & Janer*,
  425 F.3d 836 (10th Cir. 2005) ................................................. 12-13, 42

*Giano v. Goord*,
  380 F.3d 670 (2d Cir 2004) ................................................................ 42

*Gillings v. Banvelos*,
  650 F. App'x 622 (10th Cir. 2016) ............................................. 36-37, 43

*Gray v. Sorrels*,
  818 F. App'x 787 (10th Cir. 2020) ...................................................... 18

*Hall v. Bellmon*,
  935 F.2d 1106 (10th Cir. 1991) .......................................................... 15

*Hemphill v. New York*,
  380 F.3d 680 (2d Cir 2004) ................................................................ 42

*Hooks v. Rich*,
  2006 WL 565909 (S.D. Ga. Mar. 7, 2006) ........................................... 45

*Jernigan v. Stuchell*,
  304 F.3d 1030 (10th Cir. 2002) .................................................... 15, 43

*Johnson v. True*,
  125 F. Supp. 2d 186 (W.D. Va. 2000) ................................................. 42

*Jones v. Bock*,
  549 U.S. 199 (2007) .................................................................... 18, 20

*Lamb v. Kendrick*,
  52 F.4th 286 (6th Cir. 2022) ............................................................. 45

*Lewis v. Carrell*,

2015 WL 413640 (D. Kan. Jan. 30, 2015)...................................21, 23-29

*Lewis v. Washington*,
   300 F.3d 829 (7th Cir. 2002)....................................................43

*Libertarian Party of N.M. v. Herrera*,
   506 F.3d 1303 (10th Cir. 2007).............................................14

*Lindsey v. Cook*,
   2021 WL 483855 (D. Kan. Feb. 4, 2021)........................... 19, 43

*Little v. Jones*,
   607 F.3d 1245 (10th Cir. 2010).......................... 19, 36, 40, 45

*Martin v. Snyder*,
   2002 WL 484911 (N.D. Ill. Mar. 28, 2002) ...........................43

*McDonald v. Kinder-Morgan, Inc.*,
   287 F.3d 992 (10th Cir. 2002) ..............................................10

*McGrath v. Johnson*,
   67 F.Supp.2d 499 (E.D. Pa. 1999)........................................44

*McKeighan v. Corrections Corp. of America*,
   2010 WL 3913227 (D. Kan. Sept. 30, 2010.) ........................36

*McMiller v. Corrections Corporation of America*,
   695 F. App'x 344 (10th Cir. 2017)........................................33

*Miller v. Norris*,
   247 F.3d 736 (8th Cir. 2001).................................................44

*Mitchell v. Caruso*,
   2006 WL 3825077 (E.D. Mich. Dec. 26, 2006)......................44

*Moore v. Tresch*,
   2022 WL 612796 (10th Cir. Mar. 2, 2022)............................42

vii

*Nulf v. Int'l Paper Co.*,
  656 F.2d 553 (10th Cir. 1981) ............................................................. 10

*Nunez v. Heimgartner*,
  2017 WL 2264466 (D. Kan. May 24, 2017) ................................ 25-27, 30

*O'Connor v. Featherston*,
  2002 WL 818085 (S.D.N.Y. Apr. 29, 2002) ........................................ 42

*Owens v. Keeling*,
  461 F.3d 763 (6th Cir. 2006) ............................................................. 44

*Palmer v. Gross*,
  2003 U.S. Dist. Lexis 18103 ............................................................. 46

*Porter v. Nussle*,
  534 U.S. 516 (2002) ......................................................................... 18

*Powe v. Ennis*,
  177 F.3d 393 (5th Cir 1999) .............................................................. 43

*Redford v. Kansas ex rel. Dep't of Corr.*,
  295 P.3d 1054 2013 WL 781102 (Kan. Ct. App. Mar. 1, 2013)
  ................................................................................... 23-24, 26, 39-40

*Reed v. Bennett*,
  312 F.3d 1190 (10th Cir. 2002) .......................................................... 16

*Rigney v. Trapp*,
  2021 WL 5833932 (D. Kan. Dec. 9, 2021) ..................... 23, 27, 29, 31-32

*Roberts v. Barreras*,
  484 F.3d 1236 (10th Cir. 2007) .......................................................... 19

*Ross v. Blake*,
  578 U.S. 632 (2016) ........................................................... 32, 34-35, 42

*Ross v. City of Bernalillo*,

365 F.3d 1181 (10th Cir. 2004) ........................................................20-21

*Sharrock v. Stephens,*
2011 WL 5526444 (D. Kan. Nov. 14, 2011) ...............................25, 28-29

*Sherman v. Klenke,*
653 F. App'x 580 (10th Cir. 2016)....................................................33

*Short v. Greene,*
577 F. Supp. 2d 790 (S.D. W. Va. 2008) ...........................................44

*Simpson v. Gallant,*
231 F. Supp. 2d 341 (D. Me. 2002) ..................................................44

*Smalls v. Stermer,*
2011 WL 1234781 (D. Kan. Mar. 31, 2011).......................................37

*Smith v. Jones,*
606 F. App'x 899 (10th Cir. 2015)....................................................43

*Smith v. Sec'y of N.M. Dep't of Corr.,*
50 F.3d 801 (10th Cir. 1995)...........................................................10

*Talley v. Time, Inc.,*
923 F.3d 878 (10th Cir. 2019)..........................................................15

*Thompson v. Weyerhaeuser Co.,*
582 F.3d 1125 (10th Cir. 2009).........................................................28

*Tokoph v. United States,*
774 F.3d 1300 (10th Cir. 2014).........................................................28

*Tran v. County of Douglas,*
2021 WL 5505455 (D. Kan. Nov. 24, 2021) ........................................31

*Tuckel v. Grover,*
660 F.3d 1249 (10th Cir. 2011).........................................................44

*Underwood v. Wilson,*
   151 F.3d 292 (5th Cir. 1998)..................................................................43

*United States v. Greene,*
   239 F. App'x 431 (10th Cir. 2007)..........................................................41

*United States v. Lustyik,*
   833 F.3d 1263 (10th Cir. 2016)..............................................................41

*United States v. Valdez-Aguirre,*
   861 F.3d 1164 (10th Cir. 2017)..............................................................41

*United States v. Vaughan,*
   643 F. App'x 726 (10th Cir. 2016)..........................................................10

*United States v. Wooten,*
   377 F.3d 1134 (10th Cir. 2004)........................................................15, 41

*Uzochukwu v. Roody,*
   472 F. App'x 865 (10th Cir. 2012)..........................................................40

*Watchous Enters. V. Pacific Nat'l Capital,*
   2019 WL 1569344 (D. Kan. Apr. 11, 2019)..........................................28

*Weldemariam v. Branch Banking & Tr. Co.,*
   2022 WL 226277 (D. Kan. Jan. 26, 2022)............................................38

*Whitington v. Ortiz,*
   472 F.3d 804 (10th Cir. 2007)................................................................43

*Williams v. Hill,*
   422 F. App'x 682 (10th Cir. 2011)..........................................................18

*Williams v. Priatno,*
   829 F.3d 118 (2d Cir. 2016)....................................................................42

*Wolters v. Connor,*
   2004 WL 723585 (D. Kan. Apr. 1, 2004)..............................................36

*Woodford v. Ngo,*
  548 U.S. 81 (2006)...........................................................................18, 42

*Young v. Addison,*
  490 F. App'x 960 (10th Cir. 2012)......................................................13

*Ziemba v. Wezner,*
  366 F.3d 161 (2nd Cir. 2004) .............................................................44

**Statutes**

28 U.S.C. § 1291 ..................................................................................1

42 U.S.C. § 1983 ................................... 1-2, 6-7, 9-10, 18-19, 22-23, 29-32

42 U.S.C. § 1997e ..............................................................................18

**Rules**

10th Cir. R. 28.2 ................................................................................49

10th Cir. R. 28.3 ................................................................................12

10th Cir. R. 32 ...................................................................................47

D. Kan. Rule 56.1 ......................................................................16-17, 37-38

Fed. R. App. P. 28.........................................................................12, 49

Fed. R. App. P. 32.............................................................................47

Fed. R. Civ. P. 56...................................................................15, 16, 37

**Regulations**

Article 15, Chapter 44 of the Kansas Administrative Regulations
  ........................................................................ 19, 21-29, 33, 45

Article 16, Chapter 44 of the Kansas Administrative Regulations
....................................................................................21, 23, 25-29, 45

K.A.R. § 44-15-101....................................................................................3, 5

K.A.R. § 44-15-101a........................................................... 4, 19, 24, 30

K.A.R. § 44-15-101b...............................................................................19-22

K.A.R. § 44-15-102.......................................................................... 4, 24, 43

K.A.R. § 44-15-201.................................................................................32-33

K.A.R. § 44-16-104a.................................................................................23

## PRIOR OR RELATED APPEALS

None

## GLOSSARY

HCF ..............Hutchinson Correctional Facility

KDOC ...........Kansas Department of Corrections

IMPP.............Inmate Management Policy and Procedure

PLRA ............Prison Litigation Reform Act

UTS...............Unit Team Supervisor

## JURISDICTIONAL STATEMENT

The United States District Court for the District of Kansas had jurisdiction over this case because the Plaintiff, Christopher David Brown, asserted claims under 42 U.S.C. § 1983. This appeal arises from the district court's August 24, 2022, order granting Defendants Jeffrey Pettijohn and Todd Swenson's motion for summary judgment and dismissing Brown's remaining state law claims. Brown filed a timely notice of appeal on September 16, 2022. Under 28 U.S.C. § 1291, this Court has jurisdiction to hear Brown's appeal. This appeal comes from a final judgment disposing of all of Brown's claims.

## STATEMENT OF THE ISSUES

I. **The scope of this appeal includes only the grant of summary judgment rejecting Brown's § 1983 claims against Pettijohn and Swenson as contested in Brown's amended opening brief.**

II. **The district court properly granted summary judgment because Brown did not exhaust his administrative remedies.**

## STATEMENT OF THE CASE

Plaintiff-Appellant Christopher David Brown was in the custody of the Kansas Department of Corrections (KDOC) at Hutchinson Correctional Facility (HCF) on September 13, 2018, when the events in

question occurred. (R. vol. I at 25.) In his § 1983 complaint, Brown

claimed Officer Swenson violated his Eighth Amendment rights by

injuring him with a food pass door, and Officer Pettijohn displayed

deliberate indifference by failing to intervene. (R. vol. I at 13, 18; R. vol.

I at 25-26.) Specifically, Brown claimed Swenson spoke to him

disrespectfully, crushed his hand and fingers repeatedly in the food

pass door of his cell, and then climbed up on the prison cell rail in order

to use his combat boots to continue smashing Brown's hand. (R. vol. I at

16-17; R. vol. I at 25-26.)

Further, Brown said that prior to this incident he informed

Pettijohn of Swenson's disrespectful behavior toward him. (R. vol. I at

16.) According to Brown, as Swenson was carrying out his alleged

attack, Pettijohn saw and heard it but did nothing to stop it. (R. vol. I at

16-17; R. vol. I at 26.) Brown also alleged that HCF Warden Dan

Schnurr showed deliberate indifference to his suffering, in violation of

the Eighth Amendment. (R. vol. I at 13.) Additionally, Brown named

Carmen Baynham, a medical nurse at HCF, as a defendant. (R. vol. I at

12.)

### *Administrative Remedies*

Prior to filing suit, Brown pursued (but did not exhaust) various administrative remedies. On September 21, 2018, Brown submitted a Personal Injury Claim Form pursuant to Inmate Management Policy and Procedure (IMPP) 01-118, requesting $500 for his injuries. (R. vol. I at 23-27.) The warden disapproved the personal injury claim on March 14, 2019 (*Id.* at 2), and the Secretary of Corrections disapproved the claim on March 25, 2019 (*Id.*).

On April 25, 2019, Brown filed an Inmate Grievance Form, complaining that his personal injury claim was denied and asking for a review of security footage from September 13, 2018. (*Id.* at 40-43.) At the top of the form, Brown wrote "Special Kinds of Problems." (*Id.* at 40.) The Unit Team Response on Brown's April 25, 2019 grievance form states: "Per KAR 44-15-101 the grievance procedure is not to be used as a substitute for or part of the injury claims procedure. You can not grieve the property claim response." (*Id.*) In the Inmate Response section of the form, Brown responded that he was not satisfied and attempted to submit the document to his Unit Team representative. (*Id.*) Brown wrote a note on the form that it was "Returned to me 5-23-

2019 by UT Graff at cell again (Returning/Official Mail to Warden's office)." (*Id.*) Warden Daniel Schnurr sent a letter to Brown dated June 17, 2019, with the subject line: "Form-9-Correspondence," stating:

> I have received the form-9 you sent me regarding the grievance you attached and how it was not handled properly.
>
> The grievance that you initially sent to my office was handled properly. It was returned to Unit Team (UTS Graff), since you did not follow the proper grievance procedure according to K.A.R. 44- 15-102. At that time, the grievance was returned to you since the issue you brought up concerning your injury claim is a nongrievable issue according to the following K.A.R.:
>
> *KAR 44-15-101a provides that the grievance procedure shall not be used in any way as a substitute for, or as part of, the inmate disciplinary procedure, the classification decision-making process, or the **property loss or personal injury claims procedure**, or the procedure for censorship of publications specified in the secretary's internal management policy and procedure.*
>
> UTS Pettijohn is not retaliating against you and his response to your injury claim #BA0007940 is professional and has been approved.
>
> If you are unhappy with the outcome of the injury claim, you have the right to file a claim with the joints claim committee.

(*Id.* at 57 (emphasis in original))

On September 25, 2019, Brown filed a grievance against Swenson

4

and Pettijohn based on their conduct on September 13, 2018. (*Id.* at 69.)

On October 4, 2019, Unit Team Supervisor Graff sent Brown a memo,

stating:

> [Brown] once again submitted a grievance which you are
> attempting to address outside the time frame allowed for
> filing a grievance. . . . You have already once attempted to
> address this complaint outside the allowed time frame.
> Simply adding a recent form-9 about the event does not
> change the fact that the event occurred well outside the time
> limit. This grievance is being returned to you due to being
> outside the time frame for filing a grievance and will not
> receive a response.

(*Id.* at 81.)

A few weeks later, on October 28, 2019, Warden Schnurr wrote

Brown a memo stating that the matters raised in his grievance were

previously addressed and outside the applicable time frame for filing a

grievance under K.A.R. § 44-15-101(b). (*Id.* at 82.) On November 22,

2019, the Secretary of Corrections responded to Brown's November 18,

2019 appeal of Schnurr's decision, stating that HCF staff's response was

appropriate. (*Id.* at 88.) According to KDOC records, Brown has filed

293 grievance appeals on various subjects to the Kansas Secretary of

Corrections between September 15, 1993 and November 5, 2021. (R. vol.

I at 431, 433.)

### *Procedural History*

On April 15, 2021, Brown brought this lawsuit under 42 U.S.C. § 1983, asking for "a declaratory judgment stating that the unnecessary, excessive use of force against [him] by Def. Swenson violated [his] right to be free of cruel and unusual punishment … and constituted assault and battery under Kansas state law and Constitution." (R. vol. I at 10, 21.) He also asked that Defendants be held liable jointly and severally for nominal, compensatory, and punitive damages; reasonable attorney fees and costs; $10,000 for spoliation of evidence; and "other just and equitable relief [the district] court deems necessary." (R. vol. I at 21.)

On January 3, 2022, the district court dismissed Brown's claims against Schnurr and Baynham, but permitted his claims against Swenson and Pettijohn to continue. (R. vol. I at 285.) No *Martinez* Report was ordered. On March 22, 2022, Defendants filed a Motion to Dismiss, or in the Alternative, for Summary Judgment. (Docs. 25-27.) Brown filed a response (R. vol. II at 10), to which Defendants replied on May 25, 2022 (R. vol. II at 233). Brown filed an amended response on June 8, 2022 (R. vol. II at 244), which Defendants did not have a chance to consider in their reply, but which the district court considered. (R.

vol. II at 115.) Brown moved twice, not for leave to file a sur-reply, but for an "extension of time" to file one, which the district court denied as moot because he did not have leave to file a sur-reply. (Doc. 40 at 1-3.) The district court granted summary judgment to Defendants Jeffrey Pettijohn and Todd Swenson on August 24, 2022, and dismissed Brown's remaining state law claims, declining to exercise supplemental jurisdiction over them. (R. vol. II at 115.)

## SUMMARY OF ARGUMENT

The scope of this appeal does not include: (1) Brown's initial opening brief because his amended brief replaces it; (2) claims against Schnurr or Baynham, any official capacity claims, or state law claims because Brown has not appealed those issues; (3) new allegations, arguments, evidence, or defendants added for the first time on appeal; (4) arguments incorporated by reference; or (5) unexplained exhibits.

The district court properly granted summary judgment because Brown did not exhaust his administrative remedies. The district court correctly recounted the uncontroverted facts, which show that Brown only filed time-barred grievances. Brown's personal injury claims do not exhaust administrative remedies for § 1983 claims under the Prison

Litigation Reform Act as defined by Kansas regulations and interpreted by relevant case law. The underlying issue was inappropriate for a "special kinds of problems" grievance, so no such grievance could have exhausted administrative remedies here. Brown has not shown that Defendant Pettijohn lulled Brown into following the wrong procedure, and any substantial compliance or reasonable mistake do not excuse a failure to exhaust administrative remedies under the PLRA. Brown's mere allegations of destroyed grievances without more is insufficient to overcome the defense of failure to exhaust, especially since the "destroyed" grievances Brown alleges would have also been untimely. The string cites of cases Brown provides without analysis do not present a sufficiently reasoned argument to bring an issue before this Court, but Defendants' analysis shows that none of those cases help Brown's case anyways. For the reasons above, this Court should affirm the grant of summary judgment to Defendants.

## ARGUMENT

I. **The scope of this appeal includes only the grant of summary judgment rejecting Brown's § 1983 claims against Pettijohn and Swenson as contested in Brown's amended opening brief.**

### *Discussion*

#### A. *Brown's arguments in his initial opening brief are not before this Court.*

Although Brown filed an initial opening brief on December 5, 2022, Brown filed a "Supplemental Opening Brief" on December 19, 2022, which the Court construed as a motion to amend the opening brief. As such, the initial opening brief has been removed from the docket and is no longer before this Court. Defendants respond to Brown's amended opening brief.

#### B. **Brown has not appealed regarding his claims against Schnurr or Baynham, regarding any official capacity claims, or regarding the dismissal of his state law claims.**

The district court dismissed former defendants Schnurr and Baynham from the case on January 3, 2022. (R. vol. I at 285.) Brown has not appealed those dismissals. In its August 24, 2022, order, the district court ruled that Brown had not brought any official capacity claims against Pettijohn and Swenson. (R. vol. II at 104.) Brown has not appealed that ruling, and Brown has even insisted that he did not bring

any official capacity claims. (R. vol. II at 23.) Also in the August 24, 2022 order, the district court dismissed Brown's state law claims against Pettijohn and Swenson, declining to exercise supplemental jurisdiction. (R. vol. II at 114-15.) Brown has not appealed the dismissal of his state law claims. Therefore, only the district court's grant of summary judgment rejecting Brown's § 1983 claims against Pettijohn and Swenson is properly before this Court.

### C. Brown cannot at this stage add new allegations, arguments, evidence, or defendants to his case.

The Tenth Circuit is "a court of review, not first view." *Chegup v. Ute Indian Tribe of Uintah & Ouray Rsrv.*, 28 F. 4th 1051, 1070 (10th Cir. 2022). Accordingly, matters not appearing in the record on appeal will not be considered by the Court. *Nulf v. Int'l Paper Co.*, 656 F.2d 553, 559 (10th Cir. 1981). Absent extraordinary circumstances, the Court does not "consider . . . claims for the first time on appeal," *Smith v. Sec'y of N.M. Dep't of Corr.*, 50 F.3d 801, 814 n.22 (10th Cir. 1995), "arguments raised for the first time on appeal," *McDonald v. Kinder-Morgan, Inc.*, 287 F.3d 992, 999 (10th Cir. 2002), and "evidence presented for the first time on appeal." *United States v. Vaughan*, 643 F. App'x 726, 727 n.1 (10th Cir. 2016) (citing *Nulf*, 656 F.2d at 559).

Similarly, it should go without saying that a plaintiff cannot add new defendants on appeal.

Here, Brown makes new allegations that "Swenson tried to put his fingers in [Brown's] eye sockets and rip out [Brown's] eyes [and] smacked [Brown's] head on the wall" (Appellant's Br. at 7), that Brown is "being denied meds" (*Id.* at 11) and that Brown is being "refused Form-9's, grievances, pens, pencils, copy tickets, [and] paper" (*Id.* at 11). These new claims and arguments cannot be added on appeal.

Brown submits several pages of new exhibits not presented to the district court and which are dated[1] after the Defendants had filed their Reply on May 25, 2022. (*Id.* at 16-39.) As such, Defendants could not have had an opportunity to address any of these exhibits before the district court even if the exhibits had been submitted to the district court. Brown only attempts to identify where three of these pages exist in the record and he points only to filings submitted after briefing had completed on the motion for summary judgment. (*Id.* at 31-33.)[2] It is

_____

[1] Except for one page which is undated. (Appellant's Br. at 34.)
[2] Defendants note that Doc. 35 at the district court level did not have an Exhibit B as Brown suggests, so those two pages cannot be found at that location in that record.

Brown's burden to show where any exhibits are in the record. "[T]he court cannot take on the responsibility of serving as the litigant's attorney in . . . searching the record." *Garrett v. Selby Connor Maddux & Janer*, 425 F.3d 836, 840 (10th Cir. 2005). Therefore, most – if not all – of the exhibits attached to Brown's brief are not properly before this Court.

Brown even makes new allegations against a person not named as a defendant, "Tommy Williams," in what may be an attempt to add a new defendant to the case. (Appellant's Br. at 13.) No new defendants can be added to the case on appeal.

### D. Brown cannot incorporate by reference his arguments before the district court.

The rules of this Court clearly state that "[i]ncorporating by reference portions of lower court or agency briefs or pleadings is disapproved and does not satisfy the requirements [for appellate briefs in] Federal Rules of Appellate Procedure 28(a) and (b)." 10th Cir. R. 28.3(b). "Allowing litigants to adopt district court filings would provide an effective means of circumventing the page limitations on briefs set forth in the appellate rules . . . and unnecessarily complicate the task of an appellate judge." *Gaines-Tabb v. ICI Explosives, USA, Inc.*, 160 F.3d

613, 624 (10th Cir. 1998). This rule applies to pro se litigants as well. *See Young v. Addison*, 490 F. App'x 960, 964 (10th Cir. 2012) (holding that the Court "will not consider arguments [a *pro se* litigant] made in state and district court that he attempts to incorporate into his appellate brief"); *see also Garrett v. Selby Connor Maddux & Janer*, 425 F.3d 836, 840 (10th Cir. 2005) ("this court has repeatedly insisted that pro se parties follow the same rules of procedure that govern other litigants").

Here, Brown attempts to incorporate by reference his arguments before the district court. (Appellant's Br. at 8.) This is prohibited by the rules of this Court, so any arguments that Brown attempts to so incorporate are not properly before this Court. Although Defendants still address some such arguments in this brief, Defendants need not do so and do so as arguments in the alternative.

Brown also attempts to incorporate by reference a declaration that he submitted to the district court. (*Id.* at 9.) Because a declaration is part of the evidentiary record, Brown is free to cite to it, but, as the next section explains, he must explain its relevance.

### *E. Brown's unexplained exhibits should not be considered.*

As explained above, the Court does not consider new exhibits not presented to the district court. For those exhibits that were in fact presented to the district court, the exhibit must have been explained before the district court for the argument to be preserved for appeal. "[A]n argument which may be inferred from a trial exhibit, but was not otherwise discussed or argued [before the district court], will not be considered on appeal." *Libertarian Party of N.M. v. Herrera*, 506 F.3d 1303, 1310 (10th Cir. 2007). And the argument must also be discussed or argued before the appellate court to properly present the issue for appeal because of the argument in the previous section that incorporation by reference is disallowed.

Here, Brown says he provided "approximately 100 pages of documents/exhibits," but to the extent Brown fails to cite to and explain the relevance of those exhibits, they are not part of his appeal.

**II.    The district court properly granted summary judgment because Brown did not exhaust his administrative remedies.**

### *Standard of Review*

This Court reviews a grant of summary judgment de novo,

"applying the same legal standards as the district court," and "view[ing] the evidence and draw[ing] reasonable inferences therefrom in the light most favorable to the nonmoving party." *Talley v. Time, Inc.*, 923 F.3d 878, 893 (10th Cir. 2019). Summary judgment is required when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

This Court also reviews de novo the district court's finding that Brown failed to exhaust his administrative remedies. *Jernigan v. Stuchell*, 304 F.3d 1030, 1032 (10th Cir. 2002). Because Brown appears *pro se*, this Court must construe his filings liberally, but it does not serve as his advocate. *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991).

### Discussion

### A. The district court correctly described the uncontroverted facts.

Although Brown nominally disputes "all facts" decided by the district court, he does not contest any factual findings with specificity sufficient to properly bring any such dispute before this Court. *See United States v. Wooten*, 377 F.3d 1134, 1145 (10th Cir. 2004) ("The

court will not consider . . . issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation."). Nevertheless, Defendants will broadly address the factual findings of the district court.

    1. *Brown failed to controvert Defendants' Statement of Material Facts, so they were admitted.*

    As required by D. Kan. Rule 56.1(f), Defendants served upon Brown the "Notice to Pro Se Litigant Who Opposes a Summary Judgment Motion," along with the required texts of D. Kan. Rule 56.1 and Fed. R. Civ. P. 56. (Doc. 27.) Yet Brown failed to provide a response to the facts set forth in ¶¶ 6-8 and 16 of Defendants' Statement of Material Facts, as required by D. Kan. Rule 56.1(b)(1) and Fed. R. Civ. P. 56, and therefore, those paragraphs were admitted. (R. vol. I at 420-22; R. vol. II at 11-21; R. vol. II at 233); D. Kan. Rule 56.1(a); *see Reed v. Bennett*, 312 F.3d 1190, 1194-95 (10th Cir. 2002). In accordance with D. Kan. Rule 56.1(b)(1), Brown responded to the facts set forth in ¶¶ 1-5, 9-15 and 17 of Defendants' Statement of Material Facts, but, as Defendants have pointed out, Brown's responses to those paragraphs failed to controvert them as stated. (R. vol. II at 234-36.) Consequently, all of Defendants' material facts were admitted.

  *2. Brown did not properly present any material facts that Defendants could have admitted.*

Brown claims that Defendants failed to dispute facts asserted by Brown and therefore admitted them, but Brown never properly asserted any facts in the manner required to trigger such an admission under the district court's local rules. Specifically, D. Kan. Rule 56.1(b)(2), which Brown received a copy of from Defendants (Doc. 27 at 4), clearly states:

> If the party opposing summary judgment relies on any facts not contained in movant's brief, that party must set forth each additional fact in a separately numbered paragraph, supported by references to the record, in the manner required by subsection (a), above. All material facts set forth in this statement of the non-moving party will be deemed admitted for the purpose of summary judgment unless specifically controverted by the reply of the moving party.

Brown did not set out any facts in separately numbered paragraphs in the manner required by the first sentence of this rule. Therefore, the Defendants' burden to respond in the second sentence of the rule was never triggered. Accordingly, Defendants have not admitted any facts under this rule. And Brown does not point to any legal authority to support his claim that Defendants admitted facts asserted by Brown.

### B. Brown failed to exhaust his administrative remedies because he filed a time-barred grievance.

The Prison Litigation Reform Act (PLRA) requires an inmate to exhaust all available administrative remedies before bringing a § 1983 claim about prison conditions. 42 U.S.C. § 1997e(a); *Porter v. Nussle*, 534 U.S. 516, 520 (2002). "There is no question that exhaustion is mandatory under the PLRA and that unexhausted claims cannot be brought in court." *Jones v. Bock*, 549 U.S. 199, 211 (2007). "[T]he PLRA exhaustion requirement requires proper exhaustion." *Woodford v. Ngo*, 548 U.S. 81, 93 (2006). "An inmate properly exhausts a claim by utilizing each step the prison holds out for resolving the claim internally and by abiding 'with an agency's deadlines and other critical procedural rules.'" *Gray v. Sorrels*, 818 F. App'x 787, 789 (10th Cir. 2020) (quoting *Woodford*, 548 U.S. at 90). "In other words, a prisoner must comply with procedural 'rules that are defined not by the PLRA, but by the prison grievance process itself.'" *Williams v. Hill*, 422 F. App'x 682, 684 (10th Cir. 2011). "To exhaust administrative remedies an inmate must properly comply with grievance procedures; substantial compliance is insufficient." *Fields v. Oklahoma State Penitentiary*, 511 F.3d 1109, 1112 (10th Cir. 2007).

18

In a suit governed by the PLRA, failure to exhaust is an affirmative defense, and the defendant has the burden of proof regarding exhaustion of administrative remedies. *Roberts v. Barreras*, 484 F.3d 1236, 1241 (10th Cir. 2007). The issue of Brown's failure to exhaust his available remedies prior to filing his lawsuit must be determined before addressing the merits of his suit. *See Little v. Jones*, 607 F.3d 1245, 1249 (10th Cir. 2010).

The KDOC Grievance Procedure for Inmates is set forth in K.A.R. § 44-15-101 *et seq.*, and applies "to a broad range of matters that directly affect the inmate, including … [c]omplaints by inmates regarding policies and conditions within the jurisdiction of the facility or the department of corrections; and … actions by employees and inmates, and incidents occurring within the facility." K.A.R. § 44-15-101a(d)(1). Here, Brown's § 1983 claim falls under this regulation because his complaint stems from the actions of HCF employees. *See Lindsey v. Cook*, No. 19-3094-HLT, 2021 WL 483855, at *2 (D. Kan. Feb. 4, 2021).

K.A.R. § 44-15-101b prescribes time limits for filing grievances. Inmates have "15 days from the date of discovery of the event giving

rise to the grievance, excluding Saturdays, Sundays and holidays," in which to file a grievance. K.A.R. § 44-15-101b. However, "[n]o grievance, regardless of time of discovery, shall be filed later than one year after the event." *Id*. "Any grievance filed later than these deadlines may be returned to the inmate without investigation." *Id*. Untimely grievances do not satisfy the PLRA exhaustion requirement. *Ross v. City of Bernalillo*, 365 F.3d 1181, 1185-86 (10th Cir. 2004), *abrogated on other grounds by Jones v. Bock*, 549 U.S. 199 (2007).

Here, Brown claimed that he "mentions a grievance filed on [April 25, 2019], one filed on [February 8, 2019], and another grievance filed on [September 25, 2019]." (R. vol. II at 24, ¶ 30.) But even if these were filed and constituted relevant grievances, they are unavailing for Brown, since none of these filings were made within 15 days of the September 13, 2018 incident, as required by Kansas' grievance procedure. Brown provided as exhibits documents related to the September 25, 2019, grievance against Swenson and Pettijohn, which concerned their interaction with him over a year earlier on September 13, 2018. (R. vol. I at 91.) Unit Team Supervisor (UTS) Graff informed Brown that Brown was attempting to bring his grievance outside the

permissible timeframe. (R. vol. I at 103.) The warden likewise told Brown he was seeking to address items outside the timeframe allowed for filing a grievance under K.A.R. § 44-15-101b. (R. vol. I at 104.) The Secretary of Corrections concurred with the response provided by the UTS and the warden. (R. vol. I at 110.) Because Brown did not timely file his grievance, it was returned to him without investigation. *See* K.A.R. § 44-15-101b. Filing an untimely grievance does not satisfy the PLRA exhaustion requirement. *Ross v. City of Bernalillo*, 365 F.3d at 1185-86.

Brown acknowledged a distinction between the ostensible grievances he filed and his "injury claim" (R. vol. I at 23) that he filed on September 21, 2018. (R. vol. II at 24, ¶ 30.) This injury claim is the only claim he filed within the 15-day deadline for filing grievances, and the injury claim cannot be considered a grievance, as argued further in the next section of this brief. *See Lewis v. Carrell*, No. 12-3112-DC-JPO, 2015 WL 413640, at *2-3 (D. Kan. Jan. 30, 2015) (exhausting the personal injury complaint procedure under Article 16 of chapter 44 of the Kansas Administrative Regulations does not constitute exhaustion of the grievance procedure under Article 15 of chapter 44 of those same

21

regulations).

Even if this Court were to find that Brown's April 25, 2019 attempt to grieve the denial of his personal injury claim somehow constituted a proper grievance against Pettijohn and Swenson for their interaction with him on September 13, 2018, it too would be untimely. (R. vol. I at 62); K.A.R. § 44-15-101b (inmate must file grievance within 15 days of discovering the event giving rise to the grievance, excluding Saturdays, Sundays and holidays). Thus, Defendants were entitled to the grant of summary judgment in their favor.

### C. Brown's personal injury claim does not satisfy the exhaustion requirement for § 1983 claims under the PLRA.

#### 1. Grievances and personal injury claims are separate and distinct and are used for different purposes.

Brown filed a personal injury claim against Swenson on September 21, 2018, roughly a week after the incident giving rise to his § 1983 lawsuit here. (R. vol. I at 23.) But this did not properly exhaust his available administrative remedies for purposes of § 1983 claims.

KDOC has two distinct processes for administrative exhaustion that are relevant to this discussion. The first, applicable here, is the KDOC Grievance Procedure found in Article 15, Chapter 44 of the

22

Kansas Administrative Regulations, K.A.R. § 44-15-101 *et seq.* (hereinafter "Article 15"). *Lewis v. Carrell*, No. 12-CV-3112-DC-JPO, 2015 WL 413640, at *2-3 (D. Kan. Jan. 30, 2015). As discussed above, this procedure applies to complaints that the actions of KDOC employees have violated an inmate's civil rights. The second process – KDOC's separate process for personal injury claims – previously fell under IMPP 01-118, but now falls under Article 16, Chapter 44 of the Kansas Administrative Regulations, K.A.R. § 44-16-104a (hereinafter "Article 16"). *Id.* at *3; *Redford v. Kansas ex rel. Dep't of Corr.*, 295 P.3d 1054 (table opinion), 2013 WL 781102, at *6 to *8 (Kan. Ct. App. Mar. 1, 2013) (discussing the transition from IMPP 01-118 to Article 16). The Kansas Court of Appeals has explained that the two sets of regulations in Articles 15 and 16 are "separate and distinct" from one another. *Lewis*, 2015 WL 413640, at *3 (relying on *Redford*, 2013 WL 781102, at *6).

The filing of a personal injury claim by a KDOC inmate for the incident undergirding his § 1983 lawsuit "does not render his claims exhausted." *Rigney v. Trapp*, No. 20-3106-SAC, 2021 WL 5833932, at *4 (D. Kan. Dec. 9, 2021). Where a plaintiff's § 1983 claim constitutes a

complaint about the conditions of his imprisonment and the actions of employees—as it does here—he must exhaust his remedies under Article 15. *Id.*; s*ee also Conley v. Pryor*, No. 11-3200-DDC, 2015 WL 413638, at *14 (D. Kan. Jan. 30, 2015). Brown did not do so.

In addition, the warden at HCF informed Brown in June 2019 that his personal injury claim was returned to his unit team since he "did not follow the proper grievance procedure according to K.A.R. 44-15-102." (R. vol. I at 79.) The warden emphasized that the denial of a personal injury claim "is a non-grievable issue according to … KAR 44-15-101a." (R. vol. I at 79.)

Based on the undisputed evidence, Brown failed to exhaust his administrative remedies regarding the allegations in his lawsuit. This Court should affirm the grant of summary judgment to Defendants.

2. *The cases Brown cites comport with this distinction between grievances and personal injury claims.*

Brown cites *Lewis v. Carrell* and *Redford*, claiming they demand a different result. (Appellant's Br. at 4.) Brown also cited these cases and others in his Amended Response. (R. vol. II at 244.) Defendants did not previously have an opportunity to reply to these arguments, which came after Defendants' reply had been filed, but Defendants will now address

24

these cases.

In *Sharrock v. Stephens*, the court **dismissed** an inmate's **civil rights** claim for **failure to exhaust** administrative remedies **under both Article 15 and Article 16**. *Sharrock v. Stephens*, No. 10-cv-3210-CM, 2011 WL 5526444, at *2 to *3 (D. Kan. Nov. 14, 2011). So failure to exhaust *any* administrative remedies creates the clearest case of failure to exhaust administrative remedies. Other cases show that each article applies to different types of claims.

For personal injury claims, inmates need only exhaust those administrative remedies relevant to personal injury claims, currently outlined in Article 16. In both *Lewis v. Carrell* and *Nunez v. Heimgartner*, the court **dismissed** an inmate's **personal injury** claim for **failure to exhaust** administrative remedies **under Article 16**. *Lewis v. Carrell*, No. 12–CV–3112–DDC, 2015 WL 413640, at *1, *3, *5 (D. Kan. Jan. 30, 2015); *Nunez v. Heimgartner*, No. 15-3259-EFM, 2017 WL 2264466, at *5, *8 (D. Kan. May 24, 2017) (dismissing the plaintiff's "potential personal injury claim"). **It did not matter for the personal injury claims that the inmate may have exhausted administrative remedies under Article 15.** *See Lewis*, 2015 WL

413640, at *1, *5 (finding a genuine question of material fact regarding whether Article 15 remedies had been exhausted); *Nunez*, 2017 WL 2264466, at *8 (same). Similarly, in the inverse situation in *Redford v. State ex rel. Department of Corrections*, the Kansas Court of Appeals **allowed** an inmate's **"personal injury lawsuit"** (alleging negligence) to survive dismissal when the plaintiff **exhausted** administrative remedies relevant to personal injury claims **under IMPP 01-118**. *Redford v. Kansas ex rel. Dep't of Corr.*, 295 P.3d 1054, 2013 WL 781102, at *2 (quoted language and nature of suit), *8 (holding) (Kan. Ct. App. Mar. 1, 2013) (emphasis added).

For civil rights claims, inmates need only exhaust administrative remedies relevant to civil rights claims, currently outlined in Article 15. In both *Lewis v. Carrell* and *Nunez v. Heimgartner* – although the court **dismissed** a **personal injury** claim for **failure to exhaust** administrative remedies **under Article 16** (discussed above) – the court **allowed** a separate **civil rights** claim to survive summary judgment because of a **genuine question** of material fact regarding whether the inmate had exhausted administrative remedies **under Article 15**. *Lewis*, 2015 WL 413640, at *1, *5; *Nunez*, 2017 WL

2264466, at *8 ("factual questions abound regarding the question of whether Nunez properly exhausted his administrative remedies as set forth in Article 15"). **It did not matter for the civil rights claim that the inmate had not exhausted administrative remedies under Article 16.** *See Lewis*, 2015 WL 413640, at *1, *5 (finding Article 16 remedies had not been exhausted); *Nunez*, 2017 WL 2264466, at *8 (same). Similarly, in *Conley v. Pryor*, the court **allowed** an inmate's **civil rights** claim to survive summary judgment when the inmate **exhausted** administrative personal-injury remedies **under Article 15**, despite **not exhausting** administrative remedies **under Article 16**. *Conley v. Pryor*, No. 11-3200-DDC, 2015 WL 413638, at *13 to *14 (D. Kan. Jan. 30, 2015). Finally, in *Rigney v. Trapp*, the court held that an inmate's **civil rights** claim **was barred** due to **failure to exhaust** administrative remedies **under Article 15**, despite **exhausting** administrative remedies **under Article 16**. *Rigney v. Trapp*, No. 20-3106-SAC, 2021 WL 5833932, at *2 to *5 (D. Kan. Dec. 9, 2021).

The holdings of all of these cases show a clear pattern: different administrative remedies apply to different types of claims. Specifically,

civil rights claims require exhausting administrative remedies under Article 15.

In Brown's Amended Response, he cited dicta[3] from *Sharrock* and *Lewis* saying that an inmate may be able to exhaust administrative remedies for a civil rights claim under either Article 15 or under Article 16. (R. vol. II at 248-49.) But this was only dicta, it was unnecessary to support the actual holdings, and it does not mesh with the holdings of the other cases as outlined above. Generally, when synthesizing cases from the same court, holdings should be prioritized above dicta and more recent cases should be prioritized above older ones.[4] Because the

---

[3] The Tenth Circuit has defined "dicta," in contrast with the actual holdings of a case, as "statements and comments in an opinion concerning some rule of law or legal proposition not necessarily involved nor essential to determination of the case in hand." *Thompson v. Weyerhaeuser Co.*, 582 F.3d 1125, 1129 (10th Cir. 2009); *see also dictum(3), obiter dictum*, Black's Law Dictionary (11th ed. 2019) (attached) (saying that "dicta" is the plural of "dictum," which is short for "obiter dictum," which means "something said in passing," and that because dicta is "unnecessary to the decision in the case [it is] therefore not precedential (although it may be considered persuasive)").

[4] *See, e.g., Foresight Resources Corp. v. Pfortmiller*, 719 F. Supp. 1006, 1009 (D. Kan. 1989) (referring to the "weight of the more recent cases"); *Watchous Enters. V. Pacific Nat'l Capital*, No. 16-1432-JTM, 2019 WL 1569344, at *2 (D. Kan. Apr. 11, 2019) (referring to the "weight of recent authority"); *Tokoph v. United States*, 774 F.3d 1300, 1303 (10th Cir. 2014) (saying the Tenth Circuit's holdings are binding but its dicta

holdings of all these cases can be reconciled, Defendants assert that the Court can maintain the holdings of all these cases, including the recent holding in *Rigney*, by following the holdings from *Lewis* and *Sharrock* but disregarding the dicta that Brown cites. Further, *Rigney*, being later in time, should weigh the most heavily in the analysis, including its disagreement with the dicta from *Lewis* and *Sharrock* in holding that a civil rights claim was barred for failure to exhaust administrative remedies under Article 15 despite exhausting administrative remedies under Article 16. Although none of these cases are technically binding on the Court, Defendants' argument – in contrast with Brown's argument – does not require the Court to disagree with or abrogate the holdings of any of these cases.

Therefore, the rule in *Rigney* should prevail that personal injury claims do not exhaust administrative remedies for purposes of § 1983 civil rights claims.

3. *Grievances may be filed simultaneously with personal injury claims.*

Brown repeatedly suggests – incorrectly – that grievances may not

––––––––––––––––––––

is not).

be filed at the same time as personal injury claims, citing to K.A.R. 44-15-101a(d)(2). (Appellant's Br. at 4, 9, 14.) That regulation says that grievances cannot "be used as a substitute for, or as part of, . . . the property loss or personal injury claims procedure." This simply establishes that the two processes are separate and distinct and serve different purposes, not that they are mutually exclusive. Grievances and personal injury claims can be pursued regarding the same incident at the same time. *See Nunez v. Heimgartner*, No. 15-3259-EFM, 2017 WL 2264466, at *5 (D. Kan. May 24, 2017) ("an inmate who wishes to pursue both a personal injury claim and a § 1983 claim must comply with two distinct sets of administrative procedures even if he bases his claims on a single act").

   4. *The law regarding grievances did not change.*

   Judicial decisions presumptively bear retroactive application. The Tenth Circuit has stated:

> In our constitutional order legislative enactments normally apply only prospectively while judicial decisions also bear retroactive application. . . . [W]e know that legislation is rarely afforded retroactive effect. . . . Quite the opposite from legislation (and with equal certainty) we can say that judicial decisions "have had retrospective operation for near a thousand years." . . . . [W]hen it comes to the judiciary we know its decisions are presumptively retroactive.

*De Niz Robles v. Lynch*, 803 F.3d 1165, 1167, 70-71 (10th Cir. 2015)
(Gorsuch, J.).

Here, Brown claims that the law changed since he filed his
complaint. (Appellant's Br. at 2.) Earlier, in his Amended Response,
Brown complained that Defendants cited two cases that were decided
after the filing date of Brown's complaint. These cases were *Tran v.
County of Douglas*, No. 21-2310-KHV, 2021 WL 5505455 (D. Kan. Nov.
24, 2021), which Defendants cited regarding the pandemic-related
tolling of statutes of limitations in Kansas, and *Rigney v. Trapp*, No. 20-
3106-SAC, 2021 WL 5833932 (D. Kan. Dec. 9, 2021), which Defendants
cited regarding exhaustion of remedies for § 1983 claims under the
Prison Litigation Reform Act. Although some exceptions exist to the
retroactive application rule,[5] no exceptions appear to apply here. What
is more, Brown has neither pointed to an exception to this rule nor
explained why an exception might conceivably apply. Therefore, the
presumption of retroactive application applies and these cases cited by

---

[5] For example, some judicial decisions apply retroactively for new and
ongoing cases but not for purposes of collateral review of completed
cases. *See Edwards v. Vannoy*, 141 S. Ct. 1547, 1554 (2021).

Defendants may properly be considered by the Court.

Regarding *Rigney* and the exhaustion requirement in particular, in 2016, the Supreme Court overruled circuits that previously had held that a prisoner's "reasonable mistake" about a regulation supported exhaustion. *Ross v. Blake*, 578 U.S. 632, 637, 639, 648-49 (2016). So any mistaken belief held by Brown regarding the regulation is legally irrelevant.

### D. Brown's alleged special kinds of problems grievance would not have satisfied the exhaustion requirement for § 1983 claims under the PLRA.

Brown attempts to create a triable issue by arguing that his September 2019 grievance was a "special kinds of problems" grievance. (Appellant's Br. at 9.) Before the district court, Brown argued in his Response that he "submitted a special kinds of problems complaint on a grievance form per K.A.R. 44-15-201." (R. vol. II at 17, ¶ 17.) But again, this does not overcome his failure to exhaust. While Brown claims he put his "special kinds of problems grievance form in [an] envelope, sealing it, writing official/legal mail on the outside, and address[ed] to H.C.F.'s warden Dan Schnurr," he provides no evidence that he did so. (R. vol. II at 17, ¶ 17.) But even if taken as true, "special kinds of

problems" filings "should be reserved for the most difficult and complex

problems" and are not appropriate for "any matter that can be

internally handled under the inmate grievance procedure." K.A.R. § 44-

15-201(a). Brown's own allegations in this matter make clear that his

problem does not qualify as a special kind of problem under this

regulation. Thus, he was required to go through the normal grievance

procedure (and claims he did) pursuant to K.A.R. § 44-15-101 *et seq.*

### E. Defendant Pettijohn did not lull Brown into following the wrong procedure.

Brown argues that his failure to properly exhaust his

administrative remedies is excused because Pettijohn allegedly told him

to file a personal injury claim form. (Appellant's Br. 3, 6-9; R. vol. II at

29-30, 39, ¶¶ 32-34, 40.) Brown says this is "the main issue the district

court is wrong on." (Appellant's Br. at 6.) However, Brown offers no

evidence that Pettijohn ever told him that filing a personal injury claim

form would constitute a proper grievance and exhaustion of the specific

incident at issue. *See McMiller v. Corrections Corporation of America*,

695 F. App'x 344, 346 (10th Cir. 2017) ("[u]nsubstantiated allegations

carry no probative weight in summary judgment proceedings," and the

nonmoving party "must go beyond the pleadings."); *Sherman v. Klenke*,

653 F. App'x 580, 585-86 (10th Cir. 2016) (conclusory and self-serving

sworn statements are not sufficient). Indeed, Pettijohn's November 26,

2018 letter to warden Schnurr recommending denial of Brown's injury

claim is strong evidence against Brown's argument here.

Moreover, as discussed above, Brown has significant experience

filing grievances, having "submitted hundreds of Form-9's, grievances,

grievance appeals," and various other filings, so he well understands

how the grievance process works. (R. vol. I at 428; R. vol. I at 431, 433;

R. vol. II at 24, ¶ 30; R. vol. II at 210, ¶ 2.) In fact, Brown filed other

grievances just months prior to the September 2018 incident

complained of here. (R. vol. I at 147; Decl. of Holthaus at ¶ 6 and Exh.

B). Thus, Brown cannot plead excuse or ignorance as a valid rationale

for his failure to file a timely grievance in this case. And even if this

Court accepts Brown's purported confusion about the grievance process,

**this would not excuse his failure to properly exhaust**. *See Beals v.*

*Jay*, 730 F. App'x 633, 637 (10th Cir. 2018) (holding that a plaintiff

cannot "rely on his purported confusion about the grievance process"

because "ignorance of the law, even for an incarcerated pro se

petitioner, generally does not excuse prompt filing"); *see also Ross v.*

*Blake*, 578 U.S. 632, 637, 639, 648-49 (2016) (holding that "reasonable mistake" cannot excuse a prisoner's failure to exhaust but that the sole exception involves only whether administrative remedies were actually available to the inmate). Hence, Brown cannot claim that Pettijohn somehow lulled him into following the wrong procedure.

Brown has not offered any legally valid excuse for his failure to file his grievance on time. So no tolling of the regulatory deadlines is warranted.

### F. Brown cannot show exhaustion of administrative remedies by mere allegations of destroyed grievances.

Brown repeatedly relies on general and unsubstantiated assertions that his legal filings have been "destroyed" by KDOC officials. (Appellant's Br. at 2-6, 10-11, 13; R. vol. II at 25-27, 29-31, 37-39, 41, ¶¶ 30, 32, 33, 34, 39, 40, 42.) For example, in his Complaint he states that HCF "has always been a facility where Unit Teams destroy my Form-9's and grievances." (R. vol. I at 96.) He asserts that HCF "staff has a pattern of behavior of destroying my/prisoners Form-9's/grievances to assist other staff [to] get impunity." (R. vol. I at 99.) In his Response, Brown claims that he "attempted to exhaust his administrative remedies, and KDOC/HCF staff destroyed [his] Form-

9's, preventing [his] attempts to invoke the grievance procedure over and over again." (R. vol. II at 25, ¶ 30.) These are "mere allegations," which do not satisfy Brown's burden to present specific facts regarding exhaustion. *See McKeighan v. Corrections Corp. of America*, No. 08-3173-SAC, 2010 WL 3913227, at *1 (D. Kan. Sept. 30, 2010.) Brown's conclusory allegations that prison officials destroyed his Form-9's does not excuse his failure to exhaust his administrative remedies. *Id.* at *8 (citing *Bell v. Ward*, 189 F. App'x 802, 804 (10th Cir. July 26, 2006)); *see Wolters v. Connor*, No. 03-3251-KHV, 2004 WL 723585, at *3 (D. Kan. Apr. 1, 2004) (prisoner cannot claim grievance process is futile "based on allegations that prison officials destroyed some grievances").

Brown points out that when prison officials actually inhibit an inmate's ability to use grievance procedures, that can estop use of the exhaustion defense. (Appellant's Br. at 12-14.) Earlier, in his Amended Response, Brown cited *Little v. Jones* and *Gillings v. Banvelos* for the proposition that "[w]here prison officials prevent, thwart, or hinder a prisoner's efforts to avail himself of an administrative remedy, they render that remedy 'unavailable' and a court will excuse the prisoner's failure to exhaust." *Little v. Jones*, 607 F.3d 1245, 1250 (10th Cir. 2010)

36

(cited by *Gillings v. Banvelos*, 650 F. App'x 622, 624 n.2 (10th Cir. 2016)). But the "[p]laintiff has the burden of proving exhaustion was impeded." *Smalls v. Stermer*, No. 10–3025–JTM, 2011 WL 1234781, at *12 (D. Kan. Mar. 31, 2011). Making conclusory allegations that prison officials destroyed grievances does not meet this burden. *See Bell v. Ward*, 189 F. App'x at 803-04 (affirming dismissal for failure to exhaust administrative remedies when the plaintiff made only conclusory allegations that prison officials destroyed his grievance appeals); *see also Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007) (requiring "enough facts to state a claim to relief that is plausible on its face"); *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("a formulaic recitation of the elements of a cause of action will not do").

As required by D. Kan. Rule 56.1(f), Defendants served upon Brown the "Notice to Pro Se Litigant Who Opposes a Summary Judgment Motion," along with the required texts of Fed. R. Civ. P. 56 and D. Kan. Rule 56.1. (Doc. 27.) Under D. Kan. Rule 56.1(a), all material facts set forth in Defendants' motion "will be deemed admitted for the purpose of summary judgment unless specifically controverted by the statement of the opposing party." D. Kan. Rule 56.1(a); *see also*

*Weldemariam v. Branch Banking & Tr. Co.*, No. 20-2301-JWB, 2022 WL 226277, at *1 (D. Kan. Jan. 26, 2022) (citing *Coleman v. Blue Cross Blue Shield of Kan., Inc.*, 287 F. App'x 631, 635 (10th Cir. 2008)) ("Failure to properly controvert a proposed fact that is properly supported will result in a determination that the fact is admitted."). To specifically controvert a material fact from Defendants' motion, Brown must "contend[] a genuine issue exists" in his own "concise statement of material facts." D. Kan. Rule 56.1(b)(1). The district court has stated with this particular rule in view that "[a]lthough the Court must construe the pleadings of pro se litigants liberally, parties proceeding pro se still must comply with the procedural rules or suffer the consequences of noncompliance. This includes the Local Rules." *Dartez v. Peters*, No. 15-03255-EFM, 2017 WL 2774670, at *8 (D. Kan. June 27, 2017) (cleaned up).

Here, Defendants alleged in paragraph 13 of their statement of material facts, "Not until September 25, 2019, did Brown file a grievance against Swenson and Pettijohn related to their interaction with him on September 13, 2018." (R. vol. I at 422.) Brown addressed Defendants' paragraph 13 in paragraph 21 of his statement of material

38

facts. (R. vol. II at 19-20.) He mentioned several documents he filed or received, the earliest of which he filed in February 2019. (R. vol. II at 20.) As Defendants previously pointed out in their Reply (R. vol. II at 235-36), that document simply makes a request to retain camera footage. Regardless, none of the documents mentioned fall within the required 15-day time window, so none of them can meet the timeliness requirement. The other statements and arguments in Brown's Response and Amended Response do not refer to any earlier grievances. Brown pointing to documents that fell outside the 15-day time window does not controvert this key fact and does not overcome his failure to exhaust administrative remedies.

His more general allegation of destruction of grievances is merely conclusory, not providing enough facts to meet the plausibility standard of *Twombly* and *Iqbal*, but rather simply providing a formulaic recitation of the exception Brown wishes to meet. In his Amended Response, Brown pointed to *Redford* as an example of impedance of administrative remedies being found. (R. vol. II at 245-46, 249.) But in *Redford*, the plaintiff controverted the defendants' facts, leading to a hearing, and a correctional counselor testified that he had lost the

inmate's (presumably) timely claim, leading to a finding. *Redford*, 2013 WL 781102, at *2 to *3. Here, in contrast, Brown has not controverted the fact that he failed to file a timely grievance. Therefore, Brown's arguments regarding destruction of grievances do not overcome his failure to exhaust administrative remedies.

Brown says he has exhausted administrative remedies "over and over again" and that he apparently still keeps filing grievances related to this case. (Appellant's Br. at 11.) In his Amended Response, Brown stated that he "has gone well beyond the normal limits to exhaust [his] administrative remedies" and pointed to the multiple grievances he has filed. (R. vol. II at 246.) But Brown cannot remedy a past failure to exhaust administrative remedies by filing repetitive untimely grievances after the fact. No number of untimely grievances removes the timeliness requirement. *See Uzochukwu v. Roody*, 472 F. App'x 865, 866-67 (10th Cir. 2012) (finding that an inmate failed "to properly complete the grievance process" and therefore failed to exhaust administrative remedies despite filing eleven separate grievances regarding his complaint); *see also Little v. Jones*, 607 F.3d at 1249 ("Under the [PLRA], a prisoner must exhaust his administrative

remedies *prior* to filing a lawsuit regarding prison conditions in federal

court.") (emphasis added).

### G. String cites of cases without analysis do not present a sufficiently reasoned argument to bring an issue before this Court.

"The court will not consider . . . issues adverted to in a perfunctory

manner, unaccompanied by some effort at developed argumentation."

*United States v. Wooten*, 377 F.3d 1134, 1145 (10th Cir. 2004). Although

pro se filings are construed liberally, the failure to advance a reasoned

argument as to the grounds for the appeal is insufficient appellate

argument, even for a pro se litigant. *Chytka v. Wright Tree Serv., Inc.*,

617 F. App'x 841, 844 (10th Cir. 2015). Perfunctory references to legal

materials such as cases are insufficient by themselves to raise a distinct

argument. *United States v. Valdez-Aguirre*, 861 F.3d 1164, 1166 n.3

(10th Cir. 2017); *United States v. Lustyik*, 833 F.3d 1263, 1271 n.5 (10th

Cir. 2016). When an argument consists simply of conclusory statements

"followed by citation to a string of cases, without any explanation of how

the cases might be comparable," that "is insufficient to present the issue

for review." *United States v. Greene*, 239 F. App'x 431, 446 (10th Cir.

2007). And the Court should decline to make the argument for the

appellant. *Id.* (so declining); *see also Garrett v. Selby Connor Maddux & Janer*, 425 F.3d 836, 840 (10th Cir. 2005) ("the court cannot take on the responsibility of serving as the litigant's attorney in constructing arguments and searching the record").

Here, Brown repeatedly cites cases without providing adequate analysis or explanation. Most cases Brown cites come from outside the Tenth Circuit, as well. Some cases Brown cites have had the relevant holding abrogated and are no longer good law.[6] Brown cites some cases that found remedies were available, which renders as dicta any statements in them about remedies not being available in other circumstances not found in those cases.[7] In one case, the court did not

---

[6] *Hemphill v. New York*, 380 F.3d 680 (2d Cir 2004) (citing *Giano v. Goord*, 380 F.3d 670 (2d Cir 2004)), *abrogated by U.S. Supreme Court as recognized by Williams v. Priatno*, 829 F.3d 118, 123 (2d. Cir. 2016); *Adney v. McGinnis*, 380 F.3d 663 (2d Cir 2004) (relying on the abrogated holdings from *Hemphill* and *Giano*); *Johnson v. True*, 125 F. Supp. 2d 186, 189 (W.D. Va. 2000) (holding that *not* filing a grievance would constitute exhaustion of administrative remedies if the deadline passed), *abrogated by Woodford v. Ngo*, 548 U.S. 81, 90 (2006) ("Proper exhaustion demands compliance with an agency's deadlines"); *O'Connor v. Featherston*, No. 01-CIV.-3251, 2002 WL 818085, at *2 to *3 (S.D.N.Y. Apr. 29, 2002) (holding that a "reasonable attempt" at exhaustion counted), *abrogated by Ross v. Blake*, 578 U.S. 632, 637, 639, 648-49 (2016) (holding that "reasonable mistake" is insufficient to exhaust).
[7] *Moore v. Tresch*, No. 20-1334, 2022 WL 612796, at *3 to *5 (10th Cir.

even reach the issue of whether remedies were available.[8] Some cases Defendants have addressed above.

Brown cites several cases suggesting that failure of prison officials to timely respond to a grievance renders remedies unavailable when the prison grievance regulation does not provide for an appeal after such a failure to respond.[9] But Tenth Circuit precedent clearly establishes that when the regulation provides for such an appeal after a failure to respond (like in K.A.R. 44-15-102(a)(2), (b), and (c)(1)) that remedies are considered available.[10]

_____

Mar. 2, 2022); *Smith v. Jones*, 606 F. App'x 899, 901-02 (10th Cir. 2015); *Dixon v. Page*, 291 F.3d 485, 490-91 (7th Cir. 2002).

[8] *Gillings v. Banvelos*, 650 F. App'x 622, 624 n.2 (10th Cir. 2016).

[9] *Whitington v. Ortiz*, 472 F.3d 804, 807-08 (10th Cir. 2007); *Brengettcy v. Horton*, 423 F.3d 674, 682 (7th Cir. 2005) ("the policy [did] not instruct a prisoner on what he is to do when the [official] fails to respond to his grievance"); *Boyd v. Corr. Corp. of Am.*, 380 F.3d 989, 996 (6th Cir. 2004); *Lewis v. Washington*, 300 F.3d 829, 833 (7th Cir. 2002); *Foulk v. Charrier*, 262 F.3d 687, 698 (8th Cir 2001); *Powe v. Ennis*, 177 F.3d 393, 394 (5th Cir 1999); *Underwood v. Wilson*, 151 F.3d 292, 295 (5th Cir. 1998); *Dole v. Chandler*, 438 F.3d 804, 811 (7th Cir. 2006); *Armstrong v. Drahos*, No. 01-C-2697, 2002 WL 187502, at *1 (N.D. Ill. Feb. 6, 2002); *Martin v. Snyder*, No. 00-C-983, 2002 WL 484911, at *3 (N.D. Ill. Mar. 28, 2002).

[10] *Jernigan v. Stuchell*, 304 F.3d 1030, 1032-33 (10th Cir. 2002); *see also Lindsey v. Cook*, No. 19-3094-HLT, 2021 WL 483855, at *3 (D. Kan. Feb. 4, 2021) (discussing the remedy available to KDOC inmates when prison officials do not timely respond).

Brown cites several cases which are distinguishable because they involved the prison refusing to provide the plaintiff with grievance forms.[11] As discussed in Section I(C) of this brief, Brown did not properly preserve such an argument for appeal.

Brown cites cases that involves threats or violence to the inmate to prohibit them from using the grievance process.[12] Brown has not properly preserved any such argument for appeal with regard to the specific claims in this case.

Brown cites cases that involve no administrative remedies being available for particular categories of issues.[13] Here, the question is

---

[11] *Miller v. Norris*, 247 F.3d 736, 738, 740 (8th Cir. 2001); *Dale v. Lappin*, 376 F.3d 652, 656 (7th Cir. 2004); *Ziemba v. Wezner*, 366 F.3d 161, 162-64 (2nd Cir. 2004).

[12] *Tuckel v. Grover*, 660 F.3d 1249, 1252 (10th Cir. 2011); *Ziemba v. Wezner*, 366 F.3d 161, 162-64 (2nd Cir. 2004).

[13] *Short v. Greene*, 577 F. Supp. 2d 790, 798 (S.D. W. Va. 2008) (no state remedy available for particular types of claims); *Owens v. Keeling*, 461 F.3d 763, 772 (6th Cir. 2006) (proper remedy path taken instead of grievance path); *Mitchell v. Caruso*, No. 06-11567, 2006 WL 3825077, at *2 (E.D. Mich. Dec. 26, 2006) (grievances could not be used to challenge a policy or procedure and was challenging a policy or procedure); *McGrath v. Johnson*, 67 F.Supp.2d 499, 510-11 (E.D. Pa. 1999) (plaintiff alleged no remedy was available due to categorical exception); *Simpson v. Gallant*, 231 F. Supp. 2d 341, 350 (D. Me. 2002) (grievance process not defined in regulations and inmate told by official that his grievance "did not present a grievable issue"); *Boomer v. Lanigan*, No. 00-Civ.-

simply *which* of two available remedies (Article 15 or Article 16) is the appropriate remedy, not whether one is available at all.

Brown cites two cases finding that an inmate was not expected to provide info in a grievance that he could not reasonably have had at the time.[14] Specificity in a grievance is not at issue here.

Other cases are distinguishable as well. In one case, the reason grievances were rejected was not clearly found in the regulation.[15] Here, grievances were rejected as time-barred under the regulations or for attempting to appeal a decision on a personal injury claim, which is excluded by the regulations. In another case, a grievance was effectively accepted, investigated, and ruled upon, but was nominally rejected.[16] Here, Brown's grievance was not accepted, investigated, or ruled upon but rather his separate and distinct personal injury claim. In another case, the officials did not provide notice as required by their regulations that a grievance was being bifurcated, so the split-off portion was not

_____

5540, 2002 WL 31413804, at *8 (S.D.N.Y. Oct. 25, 2002) (inmate told that the grievance process did not handle the claims he was grieving).
[14] *Lamb v. Kendrick*, 52 F.4th 286, 296 (6th Cir. 2022); *Hooks v. Rich*, No. CV-605–065, 2006 WL 565909, at *4, *6 (S.D. Ga. Mar. 7, 2006).
[15] *Little v. Jones*, 607 F.3d 1245, 1249-50 (10th Cir. 2010).
[16] *Camp v. Brennan*, 219 F.3d 279, 280-81 (3d Cir. 2000).

considered split-off for purposes of appeal deadlines.[17] Here, no grievances were so bifurcated.

Defendants have been unable to locate one particular unpublished case by name using Westlaw, and Brown did not indicate which court it was from.[18] But it is unpublished, so it is not binding on this Court.

## CONCLUSION

For the foregoing reasons, Defendants respectfully ask this Court to affirm the district court's August 24, 2022, order granting summary judgment in their favor.

---

[17] *Branch v. Umphenour*, No. 1:08–CV–01655, 2015 WL 5178374, at *3 to *4 (E.D. Cal. Sept. 4, 2015).
[18] *Palmer v. Gross*, 2003 U.S. Dist. Lexis 18103. (Citation as provided by Brown.)

Respectfully submitted,

OFFICE OF ATTORNEY GENERAL
KRIS KOBACH

*/s/ Matthew L. Shoger*
Matthew L. Shoger, KS No. 28151
Assistant Attorney General
120 SW 10th Avenue, 2nd Floor
Topeka, Kansas 66612-1597
matt.shoger@ag.ks.gov
785-296-2215
Fax: (785) 291-3767
*Attorney for Defendants*

## CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limitations of Fed. R.

App. P. 32(a)(7)(B)(i) because it contains 9,577 words, excluding the

parts of the brief exempted by Fed. R. App. P. 32(f) and 10th Cir. R.

32(b), as calculated by the word-counting function of Microsoft Word.

This brief complies with the typeface requirements of Fed. R. App.

P. 32(a)(5)(A) and the type style requirements of Fed. R. P. 32(a)(6)

because this brief has been prepared in a proportionally-spaced typeface

– 14-point Century Schoolbook – using Microsoft Word.

## CERTIFICATE OF DIGITAL SUBMISSION

I hereby certify that a copy of the foregoing BRIEF OF

DEFENDANTS-APPELLEES, as submitted in digital form via the

court's ECF system, is an exact copy of the written document filed with the Clerk.

## CERTIFICATE OF SERVICE

I hereby certify that on this 27th of January, 2023, the foregoing BRIEF OF DEFENDANTS-APPELLEES was electronically filed with the Clerk of the Tenth Circuit Court of Appeals by using the CM/ECF system. I certify that I caused seven paper copies to be delivered by Federal Express to the Clerk's Office within five business days of this filing. I further certify that I cause one paper copy to be deposited in the United States Mail, first-class postage prepaid, addressed to:

Christopher David Brown #57800
El Dorado Correctional Facility
P.O. Box 311
El Dorado, KS 67042
*Appellant, pro se*

DATED: January 27, 2022        /s/ Matthew L. Shoger
                               Matthew L. Shoger
                               Assistant Attorney General

# ATTACHMENTS

## 10th Cir. R. 28.2(B) Attachments

Addendum A ..........District Court Order (Doc. 16)

Addendum B ..........District Court Memorandum and Order (Doc. 48)

Addendum C ..........Judgment (Doc. 49)

## Fed. R. App. P. 28(f) Attachments

Addendum D ..........42 U.S.C. § 1997e

Addendum E ..........K.A.R. §§ 44-15-101, -101a, -101b, -102, & -201

Addendum F ..........K.A.R. § 44-16-104a

Addendum G ..........Fed. R. Civ. P. 56

Addendum H ..........D. Kan. Rule 56.1

Addendum I ...........Fed. R. App. P. 28

Addendum J ...........Fed. R. App. P. 32

Addendum K ..........10th Cir. R. 28

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS


CHRISTOPHER DAVID BROWN,

                Plaintiff,

vs.                               Case No. 21-3105-SAC

DANIEL L. SCHNURR, et al.,

                Defendants.


## O R D E R

Plaintiff has filed a § 1983 complaint alleging he was injured from the use of excessive force in violation of the Eighth Amendment at the Hutchinson Correctional Facility (HCF).  Doc. No. 1.  The court issued a screening order (Doc. No. 7) which indicated that the complaint might be untimely filed and that plaintiff had failed to state a plausible claim against two of the four named defendants.  The court directed plaintiff to show cause why the case should not be dismissed or file an amended complaint.  The court first imposed a deadline of November 19, 2021 and then extended the deadline at plaintiff's request to December 20, 2021.

Plaintiff has filed five pleadings since November 19, 2021.  These pleadings assert that plaintiff has been subjected to harsh or unfair treatment in numerous ways, hindered in his efforts to litigate this case, and that this is retaliation for plaintiff filing this lawsuit or filing grievances against prison staff.

1

Each of the five pleadings is several pages long and two have exhibits attached.  Some of the pleadings are titled motions "to inform" or "to notify" the court.  Doc. Nos. 10, 11, and 15.  One is titled a motion for an order to show cause to defendants and other prison officers or entities to explain and justify their behavior.  Doc. No. 14.  Another pleading's title states that KDOC/HCF/EDCF is attempting to murder plaintiff.  Doc. No. 13.  Plaintiff has not filed a motion expressly asking for another extension of time to respond to the court's show cause order.

Upon review of the pleadings filed since the court's show cause order, the court concludes that plaintiff has failed to make an adequate response.  Nevertheless, the court shall not dismiss the entire action.

<u>Statute of limitations</u>

The court explained in the show cause order why it appeared that plaintiff's complaint was untimely filed.  Other judges in this district, however, have recently ruled that the limitations period has been tolled for § 1983 cases in Kansas because of state legislation passed in reaction to the COVID-19 pandemic.  The State of Kansas has passed legislation permitting the Chief Justice of the Kansas Supreme Court to issue an order extending or suspending "any deadlines or time limitations established by statute" when "the chief justice determines such action is necessary to secure the health and safety of court users, staff and judicial officers."

K.S.A. 20-172(a).  In <u>Fullen v. City of Salina, Kansas</u>, 2021 WL 4476780 *7-8 (D.Kan. 9/30/2021) and <u>Tran v. County of Douglas</u>, 2021 WL 5505455 *5-6 (D.Kan. 11/24/2021), judges in this district have held that Administrative Orders 2020-PR-016 and 2020-PR-32 from the Kansas Supreme Court suspended the statute of limitations governing § 1983 actions from March 19, 2020 through April 15, 2021.  Following these rulings, the court finds that plaintiff's complaint appears to be timely filed and that the claims against defendants Swenson and Pettijohn may go forward past screening.

<u>Schnurr</u>

At pp. 5-7 of the show cause order, the court explained that the original complaint failed to state a plausible cause of action against defendant Schnurr.  The court found that plaintiff's factual allegations of a failure to train, supervise or discipline were conclusory and did not describe specific facts that would support a claim that defendant Schnurr's actions or failures to act caused plaintiff's injuries and were accompanied by a culpable state of mind.  Cf., <u>Keith v. Koerner</u>, 707 F.3d 1185 (10th Cir. 2013)(sustaining denial of a motion to dismiss warden where much more specific factual allegations produced a plausible claim of deliberate indifference).  The court further explained that a failure by Schnurr to respond in plaintiff's favor to grievances after September 13, 2019 did not cause the earlier alleged unconstitutional conduct.  Nor did it demonstrate that defendant

Schnurr acted or failed to act with deliberate indifference on the date of or prior to plaintiff's injuries.

Plaintiff's pleadings (Doc. Nos. 10, 11, 13, 14 and 15) fail to demonstrate that the original complaint has stated a plausible claim against defendant Schnurr.  They also do not adequately explain why the alleged actions taken against plaintiff have prevented him from describing how Schnurr's actions or inactions caused plaintiff harm, and how Schnurr's actions or inactions were taken with deliberate indifference to a substantial risk of harm.

### Baynhami

At pp. 7-9 of the show cause order, the court explained that the original complaint failed to state a plausible cause of action against defendant Baynhami.  The court found that plaintiff's few allegations directed at Baynhami were inadequate to describe deliberate indifference to a serious medical issue as opposed to a mere disagreement regarding course of treatment.

Again, plaintiff's pleadings (Doc. Nos. 10, 11, 13, 14 and 15) fail to demonstrate that the original complaint states a plausible claim against defendant Baynhami.  They also fail to show that the alleged actions taken against plaintiff have prevented him from describing how Baynhami's actions or inactions were taken with deliberate indifference to a substantial risk of harm.

Conclusion

To summarize, the court has considered plaintiff's motions or notices at Doc. Nos. 10, 11, 13, 14 and 15.  If plaintiff is seeking some relief from the court by these pleadings, that relief shall be denied.  For the reasons stated above, the court shall dismiss plaintiff's claims against defendants Schnurr and Baynhami, but shall permit plaintiff's claims against defendants Swenson and Pettijohn to continue.

**IT IS SO ORDERED.**

Dated this 3rd day of January 2022, at Topeka, Kansas.


s/Sam A. Crow
U.S. District Senior Judge

Addendum B

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

CHRISTOPHER DAVID BROWN,

     Plaintiff,

     v.                                Case No. 21-3105-JAR-GEB

DANIEL SCHNURR, et al.,

     Defendants.

## MEMORANDUM AND ORDER

Plaintiff Christopher David Brown, a prisoner proceeding pro se and in forma pauperis, brings this civil rights action against Kansas Department of Corrections ("KDOC") officials related to a September 13, 2018 incident at the Hutchinson Correctional Facility ("HCF"). Highly summarized, Plaintiff alleges that Defendant Todd Swenson, an HCF officer, intentionally closed a food pass door on Plaintiff's hand and arm, causing him injuries, and denied him his food. Plaintiff alleges that Defendant Jeffrey Pettijohn, also an HCF Officer, witnessed the incident but refused to help. He further alleges that Defendants violated his First Amendment rights by interfering in the grievance process. The Honorable Sam A. Crow screened the Complaint under 28 U.S.C. § 1915A and allowed Plaintiff an opportunity to amend his complaint or show cause why the case should not be dismissed based on several deficiencies.[1] On January 3, 2022, after considering several motions and notices filed by Plaintiff, Judge Crow dismissed Plaintiff's claims against Defendants Daniel Schnurr, the Warden at HCF, and Carman Baynham, a nurse who treated him at HCF.[2] Judge Crow

---

[1] Doc. 7.

[2] Doc. 16.

permitted Plaintiff to move forward with his federal and state law claims against Swenson and Pettijohn.

Now before the Court is Swenson and Pettijohn's Motion to Dismiss, or in the Alternative, for Summary Judgment (Doc. 25). The Court also considers two motions filed by Plaintiff: Motion Requesting the Court Issue an Order to Show Cause why KDOC Officials/Employee's [sic] Continue to Subject to Numerous Forms of Retaliation for Plaintiff Exercising his First Amendment Rights and to Explain Why the Court Shouldn't Issue a Temporary Preliminary Injunction and/or Protective Order (Doc. 42); and Motion to Correct the Record (Doc. 46). The motions are fully briefed and the Court is prepared to rule. As described more fully below, Plaintiff's motion seeking an order to show cause regarding injunctive relief is denied, Defendant's motion to dismiss or in the alternative for summary judgment is granted, and Plaintiff's motion to correct the record is moot.

## I.    Motion Seeking Injunctive Relief

Plaintiff has repeatedly filed documents in this case claiming that the named Defendants and unnamed KDOC officials engaged in and continue to engage in First Amendment retaliation against him.[3] In his motion seeking a "protective order" or an order to show cause why injunctive relief should not be granted, he claims that KDOC officials regularly retaliate against him for exercising his First Amendment rights to file legal claims and complain about his prison conditions by destroying or losing his grievance forms, denying him medication, placing him with cellmates who KDOC officials know to be dangerous to Plaintiff, lodging false disciplinary actions against him, disconnecting his phone lines during personal calls, and physically harming him. He fears that KDOC officials plan to transfer him to a different facility that will be "worse

---

[3] *See* Docs. 10, 11, 13–15, 34, 37, 42.

off than Plaintiff is currently."[4]  And his motion discusses grievance forms he filed on May 17,

2022, for which he was retaliated against by being placed in a cell by himself.  Plaintiff asks the

Court to require "KDOC officials" to show cause why the Court should not issue a "Temporary

Preliminary Injunction and/or Protective Order" due to First Amendment retaliation.[5]

 "The limited purpose of a preliminary injunction 'is merely to preserve the relative

positions of the parties until a trial on the merits can be held.'"[6]  "A plaintiff seeking a

preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to

suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his

favor, and that an injunction is in the public interest."[7]  This standard "requires plaintiffs seeking

preliminary relief to demonstrate that irreparable injury is *likely* in the absence of an

injunction."[8]

 The Court denies Plaintiff's request for an order to show cause why a preliminary

injunction, or order of protection, should not be issued to prevent ongoing First Amendment

retaliation.  Injunctive relief is a "drastic and extraordinary remedy."[9]  Accordingly, the movant

must demonstrate the request is related to the conduct that gives rise to the underlying claims in

the Complaint.[10]  Plaintiff's underlying claims arise out of an incident that occurred at HCF on

September 13, 2018, when Swenson allegedly intentionally closed a food pass door on Plaintiff's

hand and arm, causing him injuries, and denied him his meal.  Although Plaintiff alleges in his

---

[4] Doc. 42 at 3.

[5] *Id.* at 1.

[6] *Schrier v. Univ. of Co.*, 427 F.3d 1253, 1258 (10th Cir. 2005) (quoting *Univ. of Tex. v. Camenisch*, 451 U.S. 390, 395 (1981)).

[7] *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008) (citations omitted).

[8] *Id.* at 21 (collecting cases).

[9] *VoteAmerica v. Schwab*, 576 F. Supp. 3d 862, 882 (D. Kan. 2021) (citations omitted).

[10] *See Hicks v. Jones*, 332 F. App'x 505, 507–08 (10th Cir. 2009).

Complaint that Defendants "continue destroying Plf's Form-9's/official/legal papers regarding *this incident* as a retaliatory act,"[11] his motion seeking injunctive relief discusses conduct by officials other than Swenson and Pettijohn and relates to incidents that occurred after this Complaint was filed. Because the motion seeks relief that is unrelated to the underlying claims in this case, the Court cannot grant the injunctive relief Plaintiff requests or issue an order to show cause why such injunctive relief should not be granted.

## II.   Federal Claims

Swenson and Pettijohn, the remaining Defendants in this case, move to dismiss, or in the alternative, for summary judgment on Plaintiff's federal claims under § 1983 based on Eleventh Amendment immunity and failure to exhaust administrative remedies. Defendants move to dismiss under the Eleventh Amendment to the extent Plaintiff alleges official-capacity claims against Swenson and Pettijohn. A suit for damages against a state official in his official capacity is the treated as a suit against the state and therefore subject to Eleventh Amendment immunity.[12] When sovereign immunity applies, it deprives the court of subject matter jurisdiction, thereby shielding states from suit.[13] The Court finds that Defendants' motion to dismiss the official-capacity claims against Swenson and Pettijohn is moot. The Complaint alleges federal claims against these Defendants in their individual capacities only, and Plaintiff confirms in his response that he intended to sue them in their individual capacities only. Thus, the Eleventh Amendment does not apply.

---

[11] Doc. 1 at 8.

[12] *Cornforth v. Univ. of Okla. Bd. of Regents*, 263 F.3d 1129, 1132–33 (10th Cir. 2001) (citations omitted).

[13] *Robbins v. U.S. Bureau of Land Mgmt.*, 438 F.3d 1074, 1080 (10th Cir. 2006).

### A.      Summary Judgment Standard

Defendants rely on matters outside the pleadings to support their exhaustion of administrative remedies affirmative defense, so the Court applies the summary judgment standard in Fed. R. Civ. P. 56(a).[14]  Summary judgment is appropriate if the moving party demonstrates that there is no genuine dispute as to any material fact and that it is entitled to judgment as a matter of law.[15]  In applying this standard, the court views the evidence and all reasonable inferences therefrom in the light most favorable to the nonmoving party.[16]  "There is no genuine issue of material fact unless the evidence, construed in the light most favorable to the non-moving party, is such that a reasonable jury could return a verdict for the non-moving party."[17]  A fact is "material" if, under the applicable substantive law, "it is essential to the proper disposition of the claim."[18]  "An issue of fact is genuine 'if the evidence is such that a reasonable jury could return a verdict for the non-moving party' on the issue."[19]

Finally, summary judgment is not a "disfavored procedural shortcut"; on the contrary, it is an important procedure "designed to secure the just, speedy and inexpensive determination of every action."[20]  In responding to a motion for summary judgment, "a party cannot rest on

---

[14] *See* Fed. R. Civ. P. 12(d) ("If, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56. All parties must be given a reasonable opportunity to present all the material that is pertinent to the motion."). Defendants properly gave notice at the time of filing that this issue was presented under the summary judgment standard and Plaintiff has had an opportunity to present material on his own behalf material to the motion.  *See* Docs. 27, 30, 33.

[15] Fed. R. Civ. P. 56(a); *see also Grynberg v. Total*, 538 F.3d 1336, 1346 (10th Cir. 2008).

[16] *City of Harriman v. Bell*, 590 F.3d 1176, 1181 (10th Cir. 2010).

[17] *Bones v. Honeywell Int'l, Inc.*, 366 F.3d 869, 875 (10th Cir. 2004) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)).

[18] *Wright ex rel. Trust Co. of Kan. v. Abbott Labs., Inc.*, 259 F.3d 1226, 1231–32 (10th Cir. 2001) (citing *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998)).

[19] *Thomas v. Metro. Life Ins. Co.*, 631 F.3d 1153, 1160 (10th Cir. 2011) (quoting *Anderson*, 477 U.S. at 248).

[20] *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986) (quoting Fed. R. Civ. P. 1).

ignorance of facts, on speculation, or on suspicion and may not escape summary judgment in the mere hope that something will turn up at trial."[21]

### B.      Uncontroverted Facts

The following facts are either uncontroverted or viewed in the light most favorable to Plaintiff as the nonmoving party.  Plaintiff alleges in his Complaint that he was the victim of excessive force on September 13, 2018, when Swenson purposefully closed a food pass door on Plaintiff's hand and arm causing injury, pain, and suffering.  Plaintiff alleges that Pettijohn witnessed what happened and, despite Plaintiff asking for his help, did not intervene to help him.

On September 21, 2018, Plaintiff submitted a Personal Injury Claim Form pursuant to IMPP 01-118D, requesting $500 for his injuries.  He recited the events of September 13, 2018, and named Swenson and Pettijohn.  Pettijohn signed this form on September 24, 2018, and the warden received it on October 1, 2018.  Pettijohn sent a memo to the warden on November 26, 2018, explaining that there was an investigation into the incident and it was determined that "Swenson did in fact use excessive force in this situation," but "the situation was handled at a supervisory level."[22]  The warden disapproved the personal injury claim on March 14, 2019, and the Secretary of Corrections disapproved the claim on March 25, 2019.

Plaintiff submitted several request forms in late 2018 and early 2019 asking for the status of his Personal Injury Claim Form.  The form that included the denials of his injury payment request, was returned to him on April 17, 2019.

On April 25, 2019, Plaintiff filed an Inmate Grievance Form, complaining that his personal injury claim was denied and asking for a review of security footage from September 13,

---

[21] *Conaway v. Smith,* 853 F.2d 789, 794 (10th Cir. 1988).

[22] Doc. 1-1 at 7.

2018.  At the top of the form, Plaintiff wrote "Special Kinds of Problems."[23]  He argued in the grievance that even if Swenson's use of excessive force was handled at the supervisory level, he has not been compensated for his physical and emotional injuries.  He alleged that Pettijohn retaliated against him and lied about the extent of Plaintiff's injuries and medical treatment.  He alleged that he received inadequate medical treatment.  And he complained about the length of time it took to return the Personal Injury Claim Form to him.

The Unit Team Response on Plaintiff's April 25, 2019 grievance form states: "Per KAR 44-15-101 the grievance procedure is not to be used as a substitute for or part of the injury claims procedure.  You can not grieve the property claim response."[24]  There is no unit team signature. In the Inmate Response section of the form, Plaintiff responded that he was not satisfied and attempted to submit the document to his Unit Team representative.  Plaintiff wrote a note on the form that it was "Returned to me 5-23-2019 by UT Graff at cell again (Returning/Official Mail to Warden's office)."[25]

Warden Daniel Schnurr sent a letter to Plaintiff dated June 17, 2019, with the subject line: "Form-9-Correspondence," stating:

> I have received the form-9 you sent me regarding the grievance you attached and how it was not handled properly.
>
> The grievance that you initially sent to my office was handled properly.  It was returned to Unit Team (UTS Graff), since you did not follow the proper grievance procedure according to K.A.R. 44-15-102.  At that time, the grievance was returned to you since the issue you brought up concerning your injury claim is a non-grievable issue according to the following K.A.R.:
>
> *KAR 44-15-101a provides that the grievance procedure shall not be used in any way as a substitute for, or as part of, the inmate*

---

[23] *Id.* at 40.

[24] *Id.*

[25] *Id.*

> *disciplinary procedure, the classification decision-making process,*
> *or the **property loss or personal injury claims procedure**, or the*
> *procedure for censorship of publications specified in the*
> *secretary's internal management policy and procedure.*
>
> UTS Pettijohn is not retaliating against you and his response to
> your injury claim #BA0007940 is professional and has been
> approved.
>
> If you are unhappy with the outcome of the injury claim, you have
> the right to file a claim with the joints claim committee.[26]

On September 25, 2019, Plaintiff filed a grievance against Swenson and Pettijohn based
on their conduct on September 13, 2018.  He stated in the form that he incorporates an attached
Form-9 "as though it was stated fully herein this grievance."[27]  He contended in this grievance
that Pettijohn destroyed a "Form-9" he first submitted and complained that Graff refused to
process the forms he has turned in complaining about that incident.  He also claimed that
Pettijohn told him there was no time limit for an investigation to be completed.

On October 4, 2019, Unit Team Supervisor Graff sent Plaintiff a memo, stating:

> [Plaintiff] once again submitted a grievance which you are
> attempting to address outside the time frame allowed for filing a
> grievance. . . .  You have already once attempted to address this
> complaint outside the allowed time frame.  Simply adding a recent
> form-9 about the event does not change the fact that the event
> occurred well outside the time limit.  This grievance is being
> returned to you due to being outside the time frame for filing a
> grievance and will not receive a response.[28]

A few weeks later, on October 28, 2019, Warden Schnurr wrote Plaintiff a memo stating
that the matters raised in his grievance were previously addressed and outside the applicable time
frame for filing a grievance under K.A.R. § 44-15-101(b).  On November 22, 2019, the Secretary

---

[26] *Id.* at 57.

[27] *Id.* at 69.

[28] *Id.* at 81.

of Corrections responded to Plaintiff's November 18, 2019 appeal of Schnurr's decision, stating

that HCF staff's response was appropriate.

According to KDOC records, Plaintiff has filed 293 grievance appeals to the Kansas

Secretary of Corrections between September 15, 1993 and November 5, 2021.

### C.     Discussion

The Prison Litigation Reform Act (the "PLRA") provides that "[n]o action shall be

brought with respect to prison conditions under section 1983 . . . by a prisoner confined in any

jail, prison, or other correctional facility until such administrative remedies as are available are

exhausted."[29]  "[T]he PLRA's exhaustion requirement applies to all inmate suits about prison

life, whether they involve general circumstances or particular episodes, and whether they allege

excessive force or some other wrong."[30]  Failure to exhaust is an affirmative defense; therefore,

Defendants bear the burden of pleading it and demonstrating that it applies.[31]

"[A]n inmate may only exhaust by properly following all of the steps laid out in the

prison system's grievance procedure."[32]  Even if the inmate begins the grievance procedure, if he

does not complete it, he is barred from pursuing relief under § 1983.[33]  The exhaustion

requirement is not left to the district court's discretion but rather is mandatory, with one

---

[29] 42 U.S.C. § 1997e(a).  Plaintiff argues that his federal claims are not confined to § 1983.  He insists that his federal claims also arise under 28 U.S.C. §§ 2201–2202, 2283–2284, 1331, 1343(a)(3), and 1367(a).  He also cites Fed. R. Civ. P. 38(b) and 65.  *See*  Doc. 30 at 5.  None of this authority provides Plaintiff with a federal cause of action.  28 U.S.C. §§ 1331, 1367, and 1343 all govern the scope of federal jurisdiction; they do not create private causes of action.  28 U.S.C. § 2201–2202 govern when a party may seek declaratory relief.  Likewise, 28 U.S.C. §§ 2283 and 2284 are procedural statutes—§ 2283 governs when a federal court may grant an injunction to stay proceedings in state court, while § 2284 governs when a three-judge panel is warranted.  Plaintiff may not assert substantive claims under the Federal Rules of Civil Procedure, which only regulate practice and procedure in the federal courts.  *See* 28 U.S.C. § 2072; *Sibbach v. Wilson & Co.*, 312 U.S. 1, 9–10 (1941).  The only federal statute cited by Plaintiff in his Complaint that gives rise to a private cause of action is 42 U.S.C. § 1983.

[30] *Porter v. Nussle*, 534 U.S. 516, 532 (2002).

[31] *Jones v. Bock*, 549 U.S. 199, 218 (2007); *Freeman v. Watkins*, 479 F.3d 1257, 1259–60 (10th Cir. 2007).

[32] *Little v. Jones*, 607 F.3d 1245, 1249 (10th Cir. 2010) (citing *Woodford v. Ngo*, 548 U.S. 81, 90 (2006)).

[33] *Id.* (quoting *Jernigan v. Stuchell*, 304 F.3d 1030, 1032 (10th Cir. 2002)).

qualifier—the administrative "remedies must indeed be 'available' to the prisoner."[34]  "Where prison officials prevent, thwart, or hinder a prisoner's efforts to avail himself of an administrative remedy, they render that remedy unavailable and a court will excuse the prisoner's failure to exhaust."[35]

The parties dispute whether the prison forms Plaintiff submitted in 2018 and 2019 exhausted his administrative remedies.  Defendants argue that the Personal Injury Claim Forms Plaintiff submitted in 2018 did not exhaust his administrative remedies for this § 1983 action, and that his 2019 grievance forms were untimely.  Plaintiff responds that prison officials interfered with his attempts to pursue administrative remedies and that the forms he submitted fulfilled the KDOC grievance process requirements.

The KDOC has a four-part grievance system that applies to § 1983 claims, contained in Article 15 of Chapter 44 of the Kansas Administrative Regulations.[36]  Under KAR § 44-15-101b:

> Grievances shall be filed within 15 days from the date of the discovery of the event giving rise to the grievance, excluding Saturdays, Sundays and holidays.  No grievance, regardless of time of discovery, shall be filed later than one year after the event.  Any grievance filed later than these deadlines may be returned to the inmate without investigation.  The name of the individual returning the grievance, the date of the return, and the reasons for the return shall be noted on the grievance.  An inmate may move to the next stage of the grievance procedure if a timely response is not received at any step in the grievance process, unless an extension of time for the response is agreed to in writing by the inmate and staff person answering the grievance.

---

[34] *Ross v. Blake*, 578 U.S. 632, 639 (2016).

[35] *Lindsey v. Cook*, No. 5:19-CV-03094-HLT, 2021 WL 483855, at *2 (D. Kan. Feb. 4, 2021) (quoting *Gray v. Sorrels*, 818 F. App'x 787, 789 (10th Cir. 2020)).

[36] *See* K.A.R. § 44-15-101a(d)(1)(A)–(B) (stating that the grievance procedure in that article applies to "[c]omplaints by inmates regarding policies and conditions within the jurisdiction of the facility or the department of corrections; and [] actions by employees and inmates, and incidents occurring within the facility."); K.A.R. § 44-15-101(b) (setting forth the grievance process).

Defendants argue that Plaintiff failed to timely exhaust because his Article 15 grievance was not submitted until September 25, 2019, more than one year after the alleged excessive force took place. The Court agrees. To be sure, Plaintiff filed a personal injury claim within fifteen days on September 21, 2018, pursuant to IMPP 01-118D. He suggests that his clock did not begin to run until fifteen days after he received back the denial of his personal injury claim on April 17, 2019. But the regulation makes clear that the clock began to run on September 13, 2018. The personal injury claim that Plaintiff filed is a "separate and distinct" procedure and does not count as exhausting his claims under the PLRA for the events that transpired on September 13, 2018.[37] Defendants have come forward with sufficient evidence to demonstrate as a matter of law that Plaintiff failed to timely exhaust his administrative remedies for purposes of the PLRA by filing under the grievance procedure that applies to his § 1983 claims.

Plaintiff makes several additional arguments about why the documents he submitted in 2018 and 2019 fulfilled the PLRA's exhaustion requirement. First, he contends that KDOC officials destroyed his administrative filings, which should excuse his failure to exhaust. But Plaintiff has failed to come forward with competent evidence to support this assertion—he simply makes the conclusory assertion that KDOC officials must have destroyed them. He neither provides copies of a timely Chapter 15 grievance, nor explains whether the destroyed grievance contains all of the content required by Article 15. And the fact that it took several months for KDOC to investigate his personal injury claim and return his form does not toll the deadline for filing a grievance. Federal courts in this district have consistently held that the personal injury claim process in Article 16 does not exhaust administrative remedies for

---

[37] *See, e.g.*, *Lewis v. Carrell*, No. 12-cv-3112-DDC-JPO, 2015 WL 413640, at *3 (D. Kan. Jan. 30, 2015); *Lindsey*, 2021 WL 483855, at *2.

purposes of a § 1983 action.[38]  He was required to follow the four-step process in § 44-15-101

within 15 days from the date of the discovery of the event giving rise to the grievance.  Because

Plaintiff failed to do so, he did not timely exhaust his administrative remedies.

Plaintiff appears to suggest that "the event giving rise to the grievance" is the denial of

his personal injury claim.  But this argument asks the Court to treat his grievance as a timely

"appeal" of the decision to deny his personal injury claim.  That is not how the process works.

The regulations explicitly state that "[t]he grievance procedure shall not be used in any way as a

substitute for, or as part of, the inmate disciplinary procedure, the classification decision-making

process, [or] the property loss or personal injury claims procedure."[39]  And the regulations permit

both types of complaints to proceed at the same time.[40]

Next, Plaintiff argues that he filed a "Special Kinds of Problems" claim, which is

excepted from the Article 15 grievance requirement and timeline.  This argument is also

unavailing.  Under KAR § 44-15-201, an inmate can "bring a problem to the attention of a higher

authority without going through the grievance procedure."  If this provision applies, the inmate is

permitted to address the document in official mail to the warden, the Kansas Secretary of

Corrections, or the state pardon attorney.  This procedure is "reserved for the most difficult and

complex problems.  Generally, any matter that can be internally handled under the inmate

grievance procedure shall not be considered as appropriate for the use of the official mail

---

[38] *Lewis*, 2015 WL 413640, at *3; *Conley v. Pryor*, No. 11-3200-DDC-KGS, 2015 WL 413638, at *14 (D. Kan. Jan. 30, 2015); *Lindsey*, 2021 WL 483855, at *2; *Lynn v. Willnauer*, No. 19-cv-3117-HLT, 2022 WL 3027013, at *2–3 (D. Kan. Aug. 2, 2022).

[39] KAR § 44-15-101a(d)(2).

[40] KAR § 44-16-104a(c) ("The requirement that the inmate submit the claim as described in subsection (a) shall apply whether or not the inmate pursues a grievance pursuant to article 15 and whether or not the inmate files a claim with the legislative joint committee on special claims against the state."); *Conley*, 2015 WL 413638, at *13 ("This means an inmate who wishes to pursue *both* a personal injury claim and a § 1983 claim must comply with two distinct sets of administrative procedures even if he bases his claims on a single act.").

correspondence privilege."[41]  The regulation allows an official "who receives a complaint letter [to] return it to the inmate with instructions . . . to make use of and follow the proper grievance procedure if, in the opinion of the official, the matter is appropriate for handling through the grievance procedure."[42]

The documents attached to Plaintiff's Complaint demonstrate that Plaintiff's "Special Kinds of Problems" form was returned to his unit team supervisor because he did not follow the grievance procedure, as permitted by KAR § 44-15-201(b).  And there is no evidence that Plaintiff's complaints rose to the level of "the most difficult and complex problems" contemplated by this regulation.  Instead, the matter could be appropriately handled through the grievance procedure.  And it is uncontroverted that the KDOC conducted an investigation. Given Plaintiff's robust history of grievances within the KDOC, he was clearly familiar with how that process should work yet failed to timely avail himself of the administrative remedies that are a prerequisite to his § 1983 claims.  Moreover, he demonstrated he could submit a grievance when he attempted to submit the untimely form in September 2019.

Finally, Plaintiff suggests that Pettijohn misled him about the steps required to exhaust his claims because he told him to file a Personal Injury Claim Form and suggested his personal injury claim would be approved.  Plaintiff states that he would not have filed this § 1983 case if his personal injury claim would have been approved.  It is true that an administrative remedy is not "available" under the PLRA "when prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation."[43] But there is no competent evidence in the summary judgment record to support Plaintiff's

---

[41] KAR § 44-15-201(a).

[42] Id. § 44-15-201(b).

[43] Ross v. Blake, 578 U.S. 632, 644 (2016).

contention that Pettijohn thwarted his attempts to take advantage of the Chapter 15 grievance process. It would not have been incorrect for Pettijohn to tell Plaintiff to file a personal injury claim form. And there is no evidence Plaintiff was prevented from filing a timely grievance while the personal injury claim and the investigation was pending. Again, given Plaintiff's experience with the grievance procedure, it is reasonable to infer that he was familiar with those forms and how to initiate the Article 15 grievance process.

In sum, Defendants have come forward with sufficient evidence to demonstrate that there is no genuine issue of material fact about whether Plaintiff failed to exhaust his administrative remedies. Plaintiff has failed to submit competent evidence to oppose the summary judgment motion. Accordingly, Defendants' motion for summary judgment on the federal claims under § 1983 is granted.

## III.   State Law Claims

The Court has granted summary judgment in favor of Defendants on the only claims left in this action over which the Court has original jurisdiction. Plaintiff's remaining claims arise under Kansas law. The Court may decline to exercise supplemental jurisdiction if only issues of state law remain after the court has dismissed all federal claims.[44] Supplemental jurisdiction "is exercised on a discretionary basis, keeping in mind considerations of judicial economy, convenience and fairness to the litigants."[45] Ordinarily, if no federal claims remain before trial, the court should decline to exercise supplemental jurisdiction over the remaining state law claims.[46] Because the Court finds that Plaintiff's federal claims are subject to dismissal, the

---

[44] 28 U.S.C. § 1367(c)(3).

[45] *Bauchman for Bauchman v. W. High Sch.*, 132 F.3d 542, 549 (10th Cir. 1997).

[46] *Id.*

Court exercises its discretion and declines to assert supplemental jurisdiction over any remaining state law claims.

## IV.     Plaintiff's Motion to Correct Record

Finally, Plaintiff recently filed a motion docketed as "Motion to Correct the Record."  In this motion, Plaintiff asks the Court to correct a statement in its July 6, 2022 Order referring to his supplemental response as untimely.[47]  Plaintiff argues that he provided his supplemental response to KDOC officials within the filing period, but it was not submitted by them to CM/ECF on time.  Plaintiff's motion is moot.  Regardless of the timeliness of his filing, the Court considered it in rendering its decision on Defendants' dispositive motion.

**IT IS THEREFORE ORDERED BY THE COURT** that Swenson and Pettijohn's Motion to Dismiss, or in the Alternative, for Summary Judgment (Doc. 25) is **granted**.  The motion for summary judgment is granted as to Plaintiff's federal claims.  The Court declines to exercise supplemental jurisdiction over the remaining state law claims.

**IT IS FURTHER ORDERD BY THE COURT** that Plaintiff's  Motion Requesting the Court Issue an Order to Show Cause why KDOC Officials/Employee's [sic] Continue to Subject to Numerous Forms of Retaliation for Plaintiff Exercising his First Amendment Rights and to Explain Why the Court Shouldn't Issue a Temporary Preliminary Injunction and/or Protective Order (Doc. 42) is **denied**; and his Motion to Correct the Record (Doc. 46) is **moot**.

**IT IS SO ORDERED.**

Dated: August 24, 2022

S/ Julie A. Robinson
JULIE A. ROBINSON
UNITED STATES DISTRICT JUDGE

---

[47] Doc. 40.

# United States District Court

------------------------- DISTRICT OF KANSAS----------------------

CHRISTOPHER DAVID BROWN,

     Plaintiff,

     v.                                          Case No 21-3105-JAR

DANIEL SCHNURR, JEFFREY NEAL
PETTIJOHN, TOD E. SWENSON, and
CARMEN G. BAYNHAMI,

     Defendants.

                Defendants,

## JUDGMENT IN A CIVIL CASE

☐     Jury Verdict.   This action came before the Court for a jury trial.  The issues have been tried and the jury has rendered its verdict.

☒     Decision by the Court.  This action came before the Court.  The issues have been considered and a decision has been rendered.

**IT IS ORDERED AND ADJUDGED**

     That pursuant to the Court's Order entered on January 3, 2022 (Doc. 16), plaintiff's claims against defendants Schnurr and Baynham are dismissed, but shall permit plaintiff's claims against defendants Swenson and Pettijohn to continue.

     **IT IS FURTHER ORDERED AND ADJUDGED** that pursuant to the Court's Memorandum and Order filed on August 24, 2022 (Doc. 48), that Swenson and Pettijohn's Motion to Dismiss, or in the Alternative, for Summary Judgment (Doc. 25) is **granted**.  The motion for summary judgment is granted as to Plaintiff's federal claims.  The Court declines to exercise supplemental jurisdiction over the remaining state law claims.

**IT IS FURTHER ORDERD BY THE COURT** that Plaintiff's Motion Requesting the

Court Issue an Order to Show Cause why KDOC Officials/Employee's [sic] Continue to Subject

to Numerous Forms of Retaliation for Plaintiff Exercising his First Amendment Rights and to

Explain Why the Court Shouldn't Issue a Temporary Preliminary Injunction and/or Protective

Order (Doc. 42) is **denied**; and his Motion to Correct the Record (Doc. 46) is **moot**.

      **IT IS SO ORDERED.**


8/24/2022                          SKYLER B. O'HARA
     Date                               CLERK OF THE DISTRICT COURT

                                     by:  s/Bonnie Wiest
                                           Deputy Clerk

KeyCite Red Flag - Severe Negative Treatment

Unconstitutional or Preempted  Unconstitutional as Applied by  Siggers-El v. Barlow,  E.D.Mich.,  Apr. 10, 2006

KeyCite Yellow Flag - Negative Treatment

Proposed Legislation

United States Code Annotated
   Title 42. The Public Health and Welfare
      Chapter 21. Civil Rights (Refs & Annos)
         Subchapter I-A. Institutionalized Persons

42 U.S.C.A. § 1997e

§ 1997e. Suits by prisoners

Effective: March 7, 2013

Currentness

**(a) Applicability of administrative remedies**

No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

**(b) Failure of State to adopt or adhere to administrative grievance procedure**

The failure of a State to adopt or adhere to an administrative grievance procedure shall not constitute the basis for an action under section 1997a or 1997c of this title.

**(c) Dismissal**

**(1)** The court shall on its own motion or on the motion of a party dismiss any action brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility if the court is satisfied that the action is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant who is immune from such relief.

**(2)** In the event that a claim is, on its face, frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant who is immune from such relief, the court may dismiss the underlying claim without first requiring the exhaustion of administrative remedies.

**(d) Attorney's fees**

**(1)** In any action brought by a prisoner who is confined to any jail, prison, or other correctional facility, in which attorney's fees are authorized under section 1988 [1] of this title, such fees shall not be awarded, except to the extent that--

**(A)** the fee was directly and reasonably incurred in proving an actual violation of the plaintiff's rights protected by a statute pursuant to which a fee may be awarded under section 1988 [1] of this title; and

**(B)(i)** the amount of the fee is proportionately related to the court ordered relief for the violation; or

**(ii)** the fee was directly and reasonably incurred in enforcing the relief ordered for the violation.

**(2)** Whenever a monetary judgment is awarded in an action described in paragraph (1), a portion of the judgment (not to exceed 25 percent) shall be applied to satisfy the amount of attorney's fees awarded against the defendant. If the award of attorney's fees is not greater than 150 percent of the judgment, the excess shall be paid by the defendant.

**(3)** No award of attorney's fees in an action described in paragraph (1) shall be based on an hourly rate greater than 150 percent of the hourly rate established under section 3006A of Title 18 for payment of court-appointed counsel.

**(4)** Nothing in this subsection shall prohibit a prisoner from entering into an agreement to pay an attorney's fee in an amount greater than the amount authorized under this subsection, if the fee is paid by the individual rather than by the defendant pursuant to section 1988 [1] of this title.

**(e) Limitation on recovery**

No Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury or the commission of a sexual act (as defined in section 2246 of Title 18).

**(f) Hearings**

**(1)** To the extent practicable, in any action brought with respect to prison conditions in Federal court pursuant to section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility, pretrial proceedings in which the prisoner's participation is required or permitted shall be conducted by telephone, video conference, or other telecommunications technology without removing the prisoner from the facility in which the prisoner is confined.

**(2)** Subject to the agreement of the official of the Federal, State, or local unit of government with custody over the prisoner, hearings may be conducted at the facility in which the prisoner is confined. To the extent practicable, the court shall allow counsel to participate by telephone, video conference, or other communications technology in any hearing held at the facility.

**(g) Waiver of reply**

**(1)** Any defendant may waive the right to reply to any action brought by a prisoner confined in any jail, prison, or other correctional facility under section 1983 of this title or any other Federal law. Notwithstanding any other law or rule of procedure,

such waiver shall not constitute an admission of the allegations contained in the complaint. No relief shall be granted to the plaintiff unless a reply has been filed.

**(2)** The court may require any defendant to reply to a complaint brought under this section if it finds that the plaintiff has a reasonable opportunity to prevail on the merits.

**(h) "Prisoner" defined**

As used in this section, the term "prisoner" means any person incarcerated or detained in any facility who is accused of, convicted of, sentenced for, or adjudicated delinquent for, violations of criminal law or the terms and conditions of parole, probation, pretrial release, or diversionary program.

**CREDIT(S)**

(Pub.L. 96-247, § 7, May 23, 1980, 94 Stat. 352; Pub.L. 103-322, Title II, § 20416(a), Sept. 13, 1994, 108 Stat. 1833; Pub.L. 104-134, Title I, § 101[(a)][Title VIII, § 803(d)], Apr. 26, 1996, 110 Stat. 1321, 1321-71; renumbered Title I, Pub.L. 104-140, § 1(a), May 2, 1996, 110 Stat. 1327; Pub.L. 113-4, Title XI, § 1101(a), Mar. 7, 2013, 127 Stat. 134.)

Notes of Decisions (1397)

**Footnotes**

1       See Reference in Text note below.

42 U.S.C.A. § 1997e, 42 USCA § 1997e
Current through P.L. 117-262. Some statute sections may be more current, see credits for details.

---

End of Document                                    © 2023 Thomson Reuters. No claim to original U.S. Government Works.

# Kan. Admin. Regs. § 44-15-101

Section 44-15-101 - Inmate or parolee grievance procedure; informal resolution; formal levels

**(a)** Throughout this article comprising the grievance procedure, all references to inmates shall include parolees, offenders, or both, supervised on either conditional release or postrelease supervision unless the meaning is clearly to the contrary. References to parolees shall include offenders supervised on either conditional or postrelease supervision. References to the warden shall include the parole director. The unit team equivalent shall be the parole officer.

**(b)** Before utilizing the grievance procedure, the inmate shall be responsible for attempting to reach an informal resolution of the matter with the personnel who work with the inmate on a direct or daily basis. An inmate in a facility or parole setting shall contact the unit team members for the attempt at informal resolution. That attempt shall be documented. The facility's inmate request forms may be used to document this process. If this informal resolution attempt fails, the grievance system may then be used. If an emergency exists and a resolution could not be obtained by going to the unit team, the inmate may go directly into the grievance process.

**(c)** At each stage, all grievances shall be answered in as short a time as possible to insure that delay will not impose additional hardship upon the inmate or unnecessarily prolong a misunderstanding. Grievances of inmates who have since been transferred, paroled, or discharged shall be answered to the extent possible.

**(d)** The grievance procedure shall incorporate several levels of problem solving to assure solution at the lowest administrative level possible.

 **(1)** Level 1. The inmate shall first submit the grievance report form to an appropriate unit team member of the facility. The parolee shall first submit the form to the parole officer.

 **(2)** Level 2. The inmate shall then submit the grievance report form to the warden of the facility. The parolee shall then submit the form to the regional parole director.

 **(3)** Level 3. If not resolved, the grievance may be next submitted to the office of the secretary of corrections. Either a response to the grievance or referral of the matter to a deputy secretary of corrections for additional investigation, if necessary, shall be made by the warden. Grievances of inmates may be referred by the secretary to the deputy secretary of corrections for facility management. Grievances of parolees may be referred by the secretary to the deputy secretary of corrections for community and field services management.

**(e)** Inmate grievance report forms and appeal forms shall be made available to all inmates. Grievance forms and appeal forms shall be provided in containers in each inmate living unit and on each segregation wing or tier. The unit team shall assist the inmate in obtaining copies of supporting material necessary to complete the grievance if the number of photocopies requested by the inmate is reasonable.

**(f)** No staff member shall refuse to sign, date, and return an inmate request form, an inmate grievance form, or a grievance receipt slip showing that the inmate came to that person for



assistance.

**(g)** Each inmate shall be entitled to invoke the grievance procedure. The procedure shall be made accessible to mentally impaired and physically handicapped inmates by the warden. This amendment shall be effective on and after February 15, 2002.

*Kan. Admin. Regs. § 44-15-101*

Authorized by and implementing K.S.A. 75-5210, K.S.A. 75-5251; effective May 1, 1980; amended May 1, 1984; amended May 1, 1987; amended April 20, 1992; amended Feb. 15, 2002.

 casetext

2

# Kan. Admin. Regs. § 44-15-101a

Section 44-15-101a - Grievance procedure distribution; orientation; applicability; remedies; advisory committee; investigation

**(a)** Grievance procedure regulations shall be distributed or made readily available to all employees and inmates in each correctional facility.

**(b)** Each inmate and employee, upon admittance to or employment by the facility, shall receive an oral explanation of the grievance procedure, including an opportunity to have questions regarding the procedure answered orally. Explanatory materials and the oral presentation shall be available in any language spoken by a significant portion of the facility's population. To the extent feasible, inmates who do not understand English shall receive an explanation of the grievance procedure in a language in which the inmate is fluent. Mentally impaired and physically handicapped inmates shall receive explanations in a manner comprehensible to them. Parole officers shall provide each parolee with a brief grievance procedure orientation that explains the manner in which the system functions for parolees. Following the explanation, each inmate and each parolee shall sign a statement indicating that the required explanation has been given.

**(c)** All employees of the facility who are directly involved in the operation of the grievance procedure shall receive training in the skills necessary to operate, or participate in, the grievance procedure.

**(d)**

 **(1)** The grievance procedure shall be applicable to a broad range of matters that directly affect the inmate, including the following:

  **(A)** Complaints by inmates regarding policies and conditions within the jurisdiction of the facility or the department of corrections; and

  **(B)** actions by employees and inmates, and incidents occurring within the facility.

 **(2)** The grievance procedure shall not be used in any way as a substitute for, or as part of, the inmate disciplinary procedure, the classification decision-making process, the property loss or personal injury claims procedure, or the procedure for censorship of publications specified in the secretary's internal management policy and procedure.

**(e)** The remedies available to the inmate may include action by the warden of the facility to correct the problem or action by the secretary of corrections to cause the problem to be corrected. Relief may include an agreement by facility officials to remedy an objectionable condition within a reasonable, specified time, or to change a facility policy or practice.

**(f)** A procedure shall be established by the warden for investigating the allegations and establishing the facts of each grievance. An inmate or employee who appears to be involved in the matter shall not participate in any capacity in the resolution of the grievance.

**(g)** A copy of the grievance response at each level shall be delivered to the unit team, to the inmate, and to the warden last responding.

*Kan. Admin. Regs. § 44-15-101a*

Authorized by and implementing K.S.A. 2005 Supp. 75-5210, K.S.A. 75-5251; effective
May 1, 1984; amended May 1, 1985; amended Feb. 15, 2002; amended June 1, 2007.



# Kan. Admin. Regs. § 44-15-101b

Section 44-15-101b - Time limit for filing grievance

Grievances shall be filed within 15 days from the date of the discovery of the event giving rise to the grievance, excluding Saturdays, Sundays and holidays. No grievance, regardless of time of discovery, shall be filed later than one year after the event. Any grievance filed later than these deadlines may be returned to the inmate without investigation. The name of the individual returning the grievance, the date of the return, and the reasons for the return shall be noted on the grievance. An inmate may move to the next stage of the grievance procedure if a timely response is not received at any step in the grievance process, unless an extension of time for the response is agreed to in writing by the inmate and staff person answering the grievance.

*Kan. Admin. Regs. § 44-15-101b*

Authorized by and implementing K.S.A. 75-5210, 75-5251; effective May 1, 1984; amended May 1, 1988.

 casetext

# Kan. Admin. Regs. § 44-15-102

Section 44-15-102 - Procedure

**(a)** Grievance step one: preliminary requirement; informal resolution and problem solving at unit team level.

**(1)** Each inmate shall first seek information, advice, or help on any matter from the inmate's unit team, or from a member of the team. If unable to solve the problem, the unit team shall refer the inmate to the proper office or department. The unit team shall assist those inmates who are unable to complete the form themselves.

**(2)** If an inmate does not receive a response from the unit team within 10 calendar days, a grievance report may be sent to the warden without the unit team signature or signatures. Each grievance report form shall include an explanation of the absence of the signature or signatures.

**(b)** Grievance step two: complaint to the warden. If any inmate receives a response but does not obtain a satisfactory solution to the problem through the informal resolution process within 10 calendar days, the inmate may fill out an inmate grievance report form and submit it, within three calendar days after the deadline for informal resolution, to a staff member for transmittal to the warden.

**(1)** The inmate shall attach a copy of each inmate request form used to attempt to solve the problem and shall indicate on the inmate grievance report the following information:

**(A)** A specific complaint that states what or who is the subject of the complaint, related dates and places, and what effect the situation, problem, or person is having on the inmate that makes the complaint necessary;

**(B)** the title and number, if possible, of any order or regulation that could be the subject of the complaint;

**(C)** the action that the inmate wants the warden to take to solve the problem;

**(D)** the name and signature of the responsible institution employee or employees or of the parole officer from whom the inmate sought assistance. This signature shall be on either an inmate request form or the grievance report form. The date on which the help was sought shall be entered by the employee on the form; and

**(E)** the date on which the completed grievance report was delivered to the staff member for transmittal to the office of the warden.

**(2)** The staff member shall forward the report to the warden before the end of the next working day and shall give a receipt to the inmate.

**(3)** Warden's response.

**(A)**

 casetext

**(i)** Upon receipt of each grievance report form, a serial number shall be assigned by the warden or designee, and the date of receipt shall be indicated on the form by the warden or designee. The nature of the grievance shall be ascertained by the warden or designee.

**(ii)** Each inmate grievance shall be returned to the inmate, with an answer, within 10 working days from the date of receipt.

**(B)** Each answer shall contain findings of fact, conclusions drawn, the reasons for those conclusions, and the action taken by the warden. Each answer shall inform the inmate that the inmate may appeal by submitting the appropriate form to the secretary of corrections.

**(C)** In all cases, the original and one copy of the grievance report shall be returned by the warden to the inmate. The copy shall be retained by the inmate for the inmate's files. The original may be used for appeal to the secretary if the inmate desires. The necessary copies shall be provided by the warden.

**(D)** A second copy shall be retained by the warden.

**(E)** Each facility shall maintain a file on grievance reports indexed by inmate name and subject matter. Grievance report forms shall not be placed in the inmate's institution file.

**(F)** Any grievance report form may be rejected by the warden if the form does not document any unit team action as required for the preliminary informal resolution process. The grievance report form shall then be sent back to the unit team for an immediate answer to the inmate.

**(G)** If no response is received from the warden in the time allowed, any grievance may be sent by an inmate to the secretary of corrections with an explanation of the reason for the delay.

**(c)** Grievance step three: appeal to the secretary of corrections.
**(1)** If the warden's answer is not satisfactory, the inmate may appeal to the secretary's office by indicating on the grievance appeal form exactly what the inmate is displeased with and what action the inmate believes the secretary should take. The inmate's appeal shall be made within three calendar days of receipt of the warden's decision, or within three calendar days of the deadline for that decision, whichever is earlier.

**(2)** The appeal shall then be sent directly and promptly by U.S. mail to the department of corrections central office in Topeka.

**(3)** When an appeal of the warden's decision is made to the secretary, the secretary shall then have 20 working days from receipt to return the grievance report form to the inmate with an answer. The answer shall include findings of fact, conclusions made, and actions taken.

**(4)** If a grievance report form is submitted to the secretary without prior action by the warden, the form may be returned to the warden. If the warden did not respond in a timely manner, the form shall be accepted by the secretary.

**(5)** An appropriate official may be designated by the secretary to prepare the answer.

**(d)** General provisions: page limits; partial responses; repetitive filings.
**(1)** At each step of the grievance procedure, the total number of pages of inmate grievance text shall not exceed 10 pages. Text appearing on the front and back of a page shall count as two pages. Any page of text beyond 10 pages shall not be considered when determining the merits of the grievance.

**(2)** Responding to parts of grievances that are procedurally or substantively appropriate shall not constitute a waiver of defects with the remaining parts of the grievance that are not procedurally or substantively appropriate.

**(3)** No offender shall abuse the grievance system by repeatedly filing the same complaint.
**(A)** Each offender who has been identified as being abusive of the grievance system by filing the same complaint on more than one occasion shall be notified in writing of this finding by the warden or secretary's designee responsible for responding to inmate grievance appeals who receives the repeated filing.
**(i)** The notification shall be given at the time of the repeated filing.

**(ii)** The repeated filing shall be returned to the offender with the notification but without further substantive response.

**(iii)** The notification shall contain reference to the matter of which the grievance is repetitive.

**(B)** If, following this notification, an offender continues to file the same complaint, the warden or secretary's designee may make application to the secretary to impose sanctions to remedy the abuse.

**(C)** Upon the finding by the secretary of an abusive filing, a fee of not more than five dollars may be imposed on the offender.

**(D)** Any application for sanctions submitted to the secretary by a warden or secretary's designee for consideration may be referred by the secretary to a designee other than a person responsible for responding to grievance or grievance appeals.

*Kan. Admin. Regs. § 44-15-102*

Authorized by and implementing K.S.A. 75-5210, K.S.A. 75-5251; effective May 1, 1980; amended May 1, 1984; amended May 1, 1985; amended May 1, 1988; amended April 20, 1992; amended Feb. 15, 2002; amended June 1, 2007.

# Kan. Admin. Regs. § 44-15-201

Section 44-15-201 - Special kinds of problems

**(a)** If an inmate wants to bring a problem to the attention of a higher authority without going through the grievance procedure, the inmate may address as official mail a sealed letter or grievance report form to the warden of the facility, the secretary of corrections, or the state pardon attorney. However, these letters or grievance report forms should be reserved for the most difficult and complex problems. Generally, any matter that can be internally handled under the inmate grievance procedure shall not be considered as appropriate for the use of the official mail correspondence privilege.

**(b)** Any department of corrections or facility official who receives a complaint letter may return it to the inmate with instructions to the inmate to make use of and follow the proper grievance procedure if, in the opinion of the official, the matter is appropriate for handling through the grievance procedure.

This amendment shall be effective on and after February 15, 2002.

*Kan. Admin. Regs. § 44-15-201*

Authorized by and implementing K.S.A. 75-5251, K.S.A. 75-5210; effective May 1, 1980; amended Feb. 15, 2002.

 casetext

# Kan. Admin. Regs. § 44-16-104a

Section 44-16-104a - Inmate claims for personal injury

**(a)** Each inmate claim for personal injury shall be submitted to the facility and secretary of corrections within 10 calendar days of the claimed personal injury.

**(b)** Each claim described in subsection (a) shall be submitted and processed in accord with the department of corrections' internal management policies and procedures.

**(c)** The requirement that the inmate submit the claim as described in subsection (a) shall apply whether or not the inmate pursues a grievance pursuant to article 15 and whether or not the inmate files a claim with the legislative joint committee on special claims against the state.

*Kan. Admin. Regs. § 44-16-104a*

Authorized by K.S.A. 75-5251; implementing K.S.A. 75-52,138; effective June 1, 2007.

 casetext

## FEDERAL RULES OF CIVIL PROCEDURE
### RULE 56
### SUMMARY JUDGMENT

(a)    **Motion for Summary Judgment or Partial Summary Judgment.** A party may move for summary judgment, identifying each claim or defense—or the part of each claim or defense—on which summary judgment is sought. The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. The court should state on the record the reasons for granting or denying the motion.

(b)    **Time to File a Motion.** Unless a different time is set by local rule or the court orders otherwise, a party may file a motion for summary judgment at any time until 30 days after the close of all discovery.

(c)    **Procedures.**

(1)    *Supporting Factual Positions.* A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:

(A)    citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or

(B)    showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

(2)    *Objection That a Fact Is Not Supported by Admissible Evidence.* A party may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence.

(3)    *Materials Not Cited.* The court need consider only the cited materials, but it may consider other materials in the record.

(4)    *Affidavits or Declarations.* An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated.

(d)    **When Facts are Unavailable to the Nonmovant.** If a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition, the court may:

(1)    defer considering the motion or deny it;

(2)    allow time to obtain affidavits or declarations or to take discovery; or

(3)    issue any other appropriate order.

(e)    **Failing to Properly Support or Address a Fact.** If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may:

(1)    give an opportunity to properly support or address the fact;

(2)    consider the fact undisputed for purposes of the motion;

(3)    grant summary judgment if the motion and supporting materials—including the facts considered undisputed—show that the movant is entitled to it; or

(4)    issue any other appropriate order.

(f)    **Judgment Independent of the Motion.** After giving notice and a reasonable time to respond, the court may:

(1)    grant summary judgment for a nonmovant;

(2)    grant the motion on grounds not raised by a party; or

(3)    consider summary judgment on its own after identifying for the parties material facts that may not be genuinely in dispute.

(g)    **Failing to Grant all the Requested Relief.** If the court does not grant all the relief requested by the motion, it may enter an order stating any material fact—including an item of damages or other relief—that is not genuinely in dispute and treating the fact as established in the case.

(h)    **Affidavit or Declaration Submitted in Bad Faith.** If satisfied that an affidavit or declaration under this rule is submitted in bad faith or solely for delay, the court—after notice and a reasonable time to respond—may order the submitting party to pay the other party the reasonable expenses, including attorney's fees, it incurred as a result. An offending party or attorney may also be held in contempt or subjected to other appropriate sanctions.

*(As amended Dec. 27, 1946, eff. Mar. 19, 1948; Jan. 21, 1963, eff. July 1, 1963; Mar. 2, 1987, eff. Aug. 1, 1987; Apr. 30, 2007, eff. Dec. 1, 2007; Mar. 26, 2009, eff. Dec. 1, 2009; Apr. 28, 2010, eff. Dec. 1, 2010.)*

## RULES OF PRACTICE OF THE UNITED STATES
## DISTRICT COURT FOR THE DISTRICT OF KANSAS
## RULE 56.1
## MOTIONS FOR SUMMARY JUDGMENT

**(a)    Supporting Memorandum.** The memorandum or brief in support of a motion for summary judgment must begin with a section that contains a concise statement of material facts as to which the movant contends no genuine issue exists. The facts must be numbered and must refer with particularity to those portions of the record upon which movant relies. All material facts set forth in the statement of the movant will be deemed admitted for the purpose of summary judgment unless specifically controverted by the statement of the opposing party.

**(b)    Opposing Memorandum.**

(1)    A memorandum in opposition to a motion for summary judgment must begin with a section containing a concise statement of material facts as to which the party contends a genuine issue exists. Each fact in dispute must be numbered by paragraph, refer with particularity to those portions of the record upon which the opposing party relies, and, if applicable, state the number of movant's fact that is disputed.

(2)    If the party opposing summary judgment relies on any facts not contained in movant's memorandum, that party must set forth each additional fact in a separately numbered paragraph, supported by references to the record, in the manner required by subsection (a), above. All material facts set forth in this statement of the non-moving party will be deemed admitted for the purpose of summary judgment unless specifically controverted by the reply of the moving party.

**(c) Reply Memorandum.** In a reply brief, the moving party must respond to the non-moving party's statement of additional material facts in the manner prescribed in subsection (b)(1).

**(d) Presentation of Factual Material.** All facts on which a motion or opposition is based must be presented by affidavit, declaration under penalty of perjury, and/or relevant portions of pleadings, depositions, answers to interrogatories, and responses to requests for admissions. Affidavits or declarations must be made on personal knowledge and by a person competent to testify to the facts stated that are admissible in evidence. Where facts referred to in an affidavit or declaration are contained in another document, such as a deposition, interrogatory answer, or admission, a copy of the relevant excerpt from the document must be attached.

**(e) Duty to Fairly Meet the Substance of the Matter Asserted.** If the responding party cannot truthfully admit or deny the factual matter asserted, the response must specifically set forth in detail the reasons why. All responses must fairly meet the substance of the matter asserted.

**(f) Notice to Pro Se Litigant Who Opposes a Summary Judgment Motion.** Any represented party moving for summary judgment against a party proceeding pro se must serve and file as a separate document, together with the papers in support of the motion, the following "Notice To Pro Se Litigant Who Opposes a Motion For Summary Judgment" with the full texts of Fed. R. Civ. P. 56 and D. Kan. Rule 56.1 attached. Where the pro se party is not the plaintiff, the movant must amend the form notice as necessary to reflect that fact.

### "Notice to Pro Se Litigant Who Opposes a Motion for Summary Judgment"

The defendant in this case has moved for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. This means that the defendant has asked the court to decide this case without a trial, based on written materials, including affidavits, submitted in support of the motion. The claims you assert in your complaint may be dismissed without a trial if you do not respond to this motion on time by filing sworn affidavits and/or other documents as required by Rule 56(c) of the Federal Rules of Civil Procedure and by D. Kan. Rule 56.1. The full text of these two rules is attached to this notice.

In short, Fed. R. Civ. P. 56 provides that you may not oppose summary judgment simply by relying upon the allegations in your complaint. Rather, you must submit evidence, such as witness statements or documents, countering the facts asserted by the defendant and raising specific facts that support your claim. If you have proof of your claim, now is the time to submit it. Any witness statements must be in the form of affidavits. An affidavit is a sworn statement of fact based on personal knowledge stating facts that would be admissible in evidence at trial. You may submit your own affidavit and/or the affidavits of others. You may submit affidavits that were prepared specifically in response to defendant's motion for summary judgment.

If you do not respond to the motion for summary judgment on time with affidavits and/or documents contradicting the material facts asserted by the defendant, the court may accept defendant's facts as true, in which event your case may be dismissed and judgment entered in defendant's favor without a trial.

* * *

*As amended 10/13, 9/00.*

## Fed. R. App. P. Rule 28. Briefs

**(a) Appellant's Brief.** The appellant's brief must contain, under appropriate headings and in the order indicated:

**(1)** a disclosure statement if required by Rule 26.1;

**(2)** a table of contents, with page references;

**(3)** a table of authorities—cases (alphabetically arranged), statutes, and other authorities—with references to the pages of the brief where they are cited;

**(4)** a jurisdictional statement, including:

> **(A)** the basis for the district court's or agency's subject-matter jurisdiction, with citations to applicable statutory provisions and stating relevant facts establishing jurisdiction;

> **(B)** the basis for the court of appeals' jurisdiction, with citations to applicable statutory provisions and stating relevant facts establishing jurisdiction;

> **(C)** the filing dates establishing the timeliness of the appeal or petition for review; and

> **(D)** an assertion that the appeal is from a final order or judgment that disposes of all parties' claims, or information establishing the court of appeals' jurisdiction on some other basis;

**(5)** a statement of the issues presented for review;

**(6)** a concise statement of the case setting out the facts relevant to the issues submitted for review, describing the relevant procedural history, and identifying the rulings presented for review, with appropriate references to the record (Rule 28(e));

**(7)** a summary of the argument, which must contain a succinct, clear, and accurate statement of the arguments made in the body of the brief, and which must not merely repeat the argument headings;

**(8)** the argument, which must contain:

89

**(A)** appellant's contentions and the reasons for them, with citations to the authorities and parts of the record on which the appellant relies; and

**(B)** for each issue, a concise statement of the applicable standard of review (which may appear in the discussion of the issue or under a separate heading placed before the discussion of the issues);

**(9)** a short conclusion stating the precise relief sought; and

**(10)** the certificate of compliance, if required by Rule 32(g)(1).

**(b) Appellee's Brief.** The appellee's brief must conform to the requirements of Rule 28(a)(1)-(8) and (10), except that none of the following need appear unless the appellee is dissatisfied with the appellant's statement:

**(1)** the jurisdictional statement;

**(2)** the statement of the issues;

**(3)** the statement of the case; and

**(4)** the statement of the standard of review.

**(c) Reply Brief.** The appellant may file a brief in reply to the appellee's brief. Unless the court permits, no further briefs may be filed. A reply brief must contain a table of contents, with page references, and a table of authorities—cases (alphabetically arranged), statutes, and other authorities—with references to the pages of the reply brief where they are cited.

**(d) References to Parties.** In briefs and at oral argument, counsel should minimize use of the terms "appellant" and "appellee." To make briefs clear, counsel should use the parties' actual names or the designations used in the lower court or agency proceeding, or such descriptive terms as "the employee," "the injured person," "the taxpayer," "the ship," "the stevedore."

**(e) References to the Record.** References to the parts of the record contained in the appendix filed with the appellant's brief must be to the pages of the appendix. If the appendix is prepared after the briefs are filed, a party referring to the record must follow one of the methods detailed in Rule 30(c). If the original record is used under Rule 30(f) and is not consecutively paginated, or if the brief refers to an unreproduced part of the record, any reference must be to the page of the original document. For example:

- Answer p. 7;

- Motion for Judgment p. 2;

- Transcript p. 231.

Only clear abbreviations may be used. A party referring to evidence whose admissibility is in controversy must cite the pages of the appendix or of the transcript at which the evidence was identified, offered, and received or rejected.

**(f) Reproduction of Statutes, Rules, Regulations, etc.** If the court's determination of the issues presented requires the study of statutes, rules, regulations, etc., the relevant parts must be set out in the brief or in an addendum at the end, or may be supplied to the court in pamphlet form.

**(g) [Reserved]**

**(h) [Reserved]**

**(i) Briefs in a Case Involving Multiple Appellants or Appellees.** In a case involving more than one appellant or appellee, including consolidated cases, any number of appellants or appellees may join in a brief, and any party may adopt by reference a part of another's brief. Parties may also join in reply briefs.

**(j) Citation of Supplemental Authorities.** If pertinent and significant authorities come to a party's attention after the party's brief has been filed—or after oral argument but before decision—a party may promptly advise the circuit clerk by letter, with a copy to all other parties, setting forth the citations. The letter must state the reasons for the supplemental citations, referring either to the page of the brief or to a point argued orally. The body of the letter must not exceed 350 words. Any response must be made promptly and must be similarly limited.

(As amended Apr. 16, 2013, eff. Dec. 1, 2013; Apr. 28, 2016, eff. Dec. 1, 2016; Apr. 25, 2019, eff. Dec. 1, 2019.)

Addendum J

| United States Code Annotated |
| Federal Rules of Appellate Procedure (Refs & Annos) |
| Title VII. General Provisions |

Federal Rules of Appellate Procedure Rule 32, 28 U.S.C.A.

Rule 32. Form of Briefs, Appendices, and Other Papers

Currentness

**(a) Form of a Brief.**

  **(1) Reproduction.**

    **(A)** A brief may be reproduced by any process that yields a clear black image on light paper. The paper must be opaque and unglazed. Only one side of the paper may be used.

    **(B)** Text must be reproduced with a clarity that equals or exceeds the output of a laser printer.

    **(C)** Photographs, illustrations, and tables may be reproduced by any method that results in a good copy of the original; a glossy finish is acceptable if the original is glossy.

  **(2) Cover.** Except for filings by unrepresented parties, the cover of the appellant's brief must be blue; the appellee's, red; an intervenor's or amicus curiae's, green; any reply brief, gray; and any supplemental brief, tan. The front cover of a brief must contain:

    **(A)** the number of the case centered at the top;

    **(B)** the name of the court;

    **(C)** the title of the case (see Rule 12(a));

    **(D)** the nature of the proceeding (e.g., Appeal, Petition for Review) and the name of the court, agency, or board below;

    **(E)** the title of the brief, identifying the party or parties for whom the brief is filed; and

    **(F)** the name, office address, and telephone number of counsel representing the party for whom the brief is filed.

**(3) Binding.** The brief must be bound in any manner that is secure, does not obscure the text, and permits the brief to lie reasonably flat when open.

**(4) Paper Size, Line Spacing, and Margins.** The brief must be on 8 ½ by 11 inch paper. The text must be double-spaced, but quotations more than two lines long may be indented and single-spaced. Headings and footnotes may be single-spaced. Margins must be at least one inch on all four sides. Page numbers may be placed in the margins, but no text may appear there.

**(5) Typeface.** Either a proportionally spaced or a monospaced face may be used.

**(A)** A proportionally spaced face must include serifs, but sans-serif type may be used in headings and captions. A proportionally spaced face must be 14-point or larger.

**(B)** A monospaced face may not contain more than 10 ½ characters per inch.

**(6) Type Styles.** A brief must be set in a plain, roman style, although italics or boldface may be used for emphasis. Case names must be italicized or underlined.

**(7) Length.**

**(A) Page Limitation.** A principal brief may not exceed 30 pages, or a reply brief 15 pages, unless it complies with Rule 32(a)(7)(B).

**(B) Type-Volume Limitation.**

**(i)** A principal brief is acceptable if it:

• contains no more than 13,000 words; or

• uses a monospaced face and contains no more than 1,300 lines of text.

**(ii)** A reply brief is acceptable if it contains no more than half of the type volume specified in Rule 32(a)(7)(B)(i).

**(b) Form of an Appendix.** An appendix must comply with Rule 32(a)(1), (2), (3), and (4), with the following exceptions:

**(1)** The cover of a separately bound appendix must be white.

**(2)** An appendix may include a legible photocopy of any document found in the record or of a printed judicial or agency decision.

**WESTLAW**  © 2023 Thomson Reuters. No claim to original U.S. Government Works.

**(3)** When necessary to facilitate inclusion of odd-sized documents such as technical drawings, an appendix may be a size other than 8 ½ by 11 inches, and need not lie reasonably flat when opened.

**(c) Form of Other Papers.**

**(1) Motion.** The form of a motion is governed by Rule 27(d).

**(2) Other Papers.** Any other paper, including a petition for panel rehearing and a petition for hearing or rehearing en banc, and any response to such a petition, must be reproduced in the manner prescribed by Rule 32(a), with the following exceptions:

**(A)** A cover is not necessary if the caption and signature page of the paper together contain the information required by Rule 32(a)(2). If a cover is used, it must be white.

**(B)** Rule 32(a)(7) does not apply.

**(d) Signature.** Every brief, motion, or other paper filed with the court must be signed by the party filing the paper or, if the party is represented, by one of the party's attorneys.

**(e) Local Variation.** Every court of appeals must accept documents that comply with the form requirements of this rule and the length limits set by these rules. By local rule or order in a particular case, a court of appeals may accept documents that do not meet all the form requirements of this rule or the length limits set by these rules.

**(f) Items Excluded from Length.** In computing any length limit, headings, footnotes, and quotations count toward the limit but the following items do not:

• cover page;

• disclosure statement;

• table of contents;

• table of citations;

• statement regarding oral argument;

• addendum containing statutes, rules, or regulations;

• certificate of counsel;

• signature block;

• proof of service; and

• any item specifically excluded by these rules or by local rule.

**(g) Certificate of Compliance.**

**(1) Briefs and Papers That Require a Certificate.** A brief submitted under Rules 28.1(e)(2), 29(b)(4), or 32(a)(7)(B)--and a paper submitted under Rules 5(c)(1), 21(d)(1), 27(d)(2)(A), 27(d)(2)(C), 35(b)(2)(A), or 40(b)(1)--must include a certificate by the attorney, or an unrepresented party, that the document complies with the type-volume limitation. The person preparing the certificate may rely on the word or line count of the word-processing system used to prepare the document. The certificate must state the number of words--or the number of lines of monospaced type--in the document.

**(2) Acceptable Form.** Form 6 in the Appendix of Forms meets the requirements for a certificate of compliance.

**CREDIT(S)**
(As amended Apr. 24, 1998, eff. Dec. 1, 1998; Apr. 29, 2002, eff. Dec. 1, 2002; Apr. 25, 2005, eff. Dec. 1, 2005; Apr. 28, 2016, eff. Dec. 1, 2016; Apr. 25, 2019, eff. Dec. 1, 2019.)

F. R. A. P. Rule 32, 28 U.S.C.A., FRAP Rule 32
Including Amendments Received Through 1-1-23

---

**End of Document**                                                    © 2023 Thomson Reuters. No claim to original U.S. Government Works.

Addendum K

# 10th Cir. R. 28

**28.1  References to appendix or record.**

**(A)   Record references.** For each issue raised on appeal, all briefs must cite the precise references in the record where the issue was raised and ruled on. Counsel are encouraged to include a footnote in the briefs at the point of the first record citation to confirm the citation convention.

**(1)   Appendix.** References to the appendix should be by volume and page number (e.g., App. Vol. 2 at 27, or Supp. App. Vol. 2 at 14).

**(2)   Record.** In cases without an appendix, references to the record should be to the record volume and page number (e.g., ROA, Vol. II, at 6). References to the transcript should be by volume and page number.

**(B)   Particular record references.** Briefs must cite the precise references in the record where a required objection was made and ruled on, if the appeal is based on:

**(1)   a failure to admit or exclude evidence;**

**(2)   the giving of or refusal to give a particular jury instruction; or**

**(3)   any other act or ruling for which a party must record an objection to preserve the right to appeal.**

**28.2  Additional requirements.**

**(A)   Appellant's brief.** In addition to all other requirements of the Federal Rules of Appellate Procedure and these rules, the appellant's brief must include as an attachment the following (even though they are also included in the appendix or record):

**(1)   copies of all pertinent written findings, conclusions, opinions, or orders of a district judge, bankruptcy judge, or magistrate judge (if the district court adopts a magistrate's report and recommendation, that report must also be included);**

**(2)   if any judicial pronouncement listed in (1) is oral, a copy of the transcript pages;**

92

    **(3)**   in social security cases, copies of the decisions of the administrative law judge and the appeals council;

    **(4)**   in immigration cases, a copy of the transcript from the Immigration Judge's oral ruling, plus copies of the written rulings of the Immigration Judge and the Board of Immigration Appeals; and

    **(5)**   the judgment.

**(B)**   **Appellee's brief.** If the appellant's brief fails to attach all the rulings required by (A), the appellee's brief must attach them.

**(C)**   **All principal briefs.**

    **(1)**   **Name of court, judge, and originating case number.** The front cover of each brief must contain the name of the court, the judge whose judgment is being appealed, and the originating case number.

    **(2)**   **Oral argument statement.** The front cover of each party's first brief must state whether oral argument is requested. If argument is requested, a statement of the reasons why argument is necessary must follow the brief's conclusion.

    **(3)**   **Statement of related cases.** At the end of the Table of Authorities, the first brief filed by each party must list all prior or related appeals, with appropriate citations, or a statement that there are no prior or related appeals.

    **(4)**   **Glossary.** All briefs containing acronyms or abbreviations not in common use (other than names of parties) must include a Glossary on a page immediately following the Table of Authorities.

    **(5)**   **Brief Attachments and the Table of Contents.** All attachments to briefs, including those required by Rule 28.2(A), shall be identified and included in the Table of Contents.

    **(6)**   **Citizenship Statement in Appeals Based on Diversity Jurisdiction—Identifying Members and Partners.**

       Where the asserted basis for federal jurisdiction is 28 U.S.C. § 1332 and a party or parties to the appeal are formed as a limited liability company (LLC), partnership, or any other unincorporated entity, each party so defined must:

(a) include in that party's brief a statement identifying each of its members and their states of citizenship; and

(b) submit a supplemental statement if any of the required information changes.

*See Americold Realty Tr. v. Conagra Foods, Inc.*, 577 U.S. 378, 382 (2016) (for diversity jurisdiction, the citizenship of an unincorporated entity depends on the citizenship of all of its members).

**28.3  Disfavored practices.**

(**A**)  **Motions to exceed word counts are disfavored**. Motions to exceed the word count will be denied unless extraordinary and compelling circumstances can be shown. A motion filed within 14 days of the brief's due date must show why earlier filing was not possible.

(**B**)  **Incorporating by reference disapproved.** Incorporating by reference portions of lower court or agency briefs or pleadings is disapproved and does not satisfy the requirements of Federal Rules of Appellate Procedure 28(a) and (b).

(**C**)  **Use of passim discouraged.** Use of passim as a citation form is discouraged. Parties are encouraged to include page references for all authorities and sources.